## HANCOCK *et al. v.* REEDY.

(Division A. April 11, 1938. Suggestion of Error Overruled May 23, 1938).

[180 So. 81. No. 33041.]

L. Barrett Jones, of Jackson, and B. B. Allen, of Indianola, for appellants.

832

Cooper & Thomas, of Indianola, for appellee.

834

836

**McGowen, J.,** delivered the opinion of the court.

Mrs. Nell Johnson Hancock and Mrs. Josephine Johnson Rice, appellants, filed a petition for the removal of

Mrs. Catherine Alexander Reedy, administratrix de bonis non and trustee of the estate of J. N. Johnson, deceased. Without detailing the allegations of the petition, in brief it charged a state of facts which showed incompetency of the acting administratrix and trustee, gross mismanagement, and a violation of certain provisions of the will in the management of the trust estate, and that the administratrix and trustee was hostile toward the petitioners who were named beneficiaries under the terms of the will of the decedent.

The will of J. N. Johnson conveyed several thousand acres of land in Washington and Sunflower countries in trust to his daughter, Mrs. J. L. Alexander, the mother of the appellee herein, who was named as trustee, and provided that in case she predeceased him, or resigned, or was unable to serve, his grandchild, Lloyd C. Alexander, would be trustee with all the rights, powers, and privileges granted in the will, and that if both of these predeceased him, then the chancellor of that district should have the power to name another trustee with the same powers and limitations as originally imposed upon the trustee named; and stipulated that the chancellor must name one of his children or grandchildren as such substituted trustee, if possible to do so. Lloyd Alexander died December 2, 1933, and Mrs. Alexander died February 11, 1934. Thereupon the chancery court appointed the appellee, Mrs. Catherine A. Reedy, as successor to her mother, both as trustee and administratrix. The three surviving children of the testator filed a petition praying the court to revoke the order appointing Catherine Alexander and praying that Mrs. Nell Johnson Hancock be appointed by the court. Subsequently the court granted the petition, removed Catherine Alexander and appointed Mrs. Hancock. Upon that order, appointing Mrs. Hancock, appeal was prosecuted to this court, and a very full statement of the case up to that time is found in Alexander et al. v. Hancock, 174 Miss. 482, 164 So. 772, 165 So. 126, wherein this court reversed the chancellor, re-

moved Mrs. Hancock, and directed the chancery court to appoint Catherine Alexander, who in the meantime had married Reedy. That judgment of this court was entered on December 9, 1935, and in January, 1936, Mrs. Catherine Alexander Reedy was appointed administratrix de bonis non and trustee in obedience to the decree of this court. Pursuant thereto she qualified as such. In 1937 Mrs. Hancock and Mrs. Rice filed the petition herein, and, after hearing the evidence, the chancery court found that the petitioners were not entitled to any of the relief prayed for and dismissed the petition, from which an appeal is prosecuted here.

1. The appellants urge upon this court that the evidence shows that Mrs. Reedy was thoroughly incompetent to discharge the duties imposed by the will; that she had violated the express provisions of the will by immediately upon entering the office of trustee leasing about 3,000 acres of land to her father, J. L. Alexander, for three years, ending December 31, 1938, at an annual rental of $12,000 and the upkeep of the place, it being asserted by the appellants that it was the intention of the testator that the lands should be operated by the trustee personally—by directing the cultivation of the place through tenants and share croppers, in order that mortgage debts of the estate might be paid, and that these children of the testator might have the net profits growing therefrom distributed to them.

2. They contend further that the trustee, immediately upon assuming office, sold the personal property belonging to the estate, consisting of mules and machinery, to her father, and did not reinvest the profits of the sale of the personal property as directed by the will, but used the money for other purposes not authorized therein.

3. They further suggest that the trustee violated the terms of the will by making small distributions to the beneficiaries of a life interest in the net income of the property without first having paid the debts.

4. They contend that the evidence of the testator in

the court below shows that she is thoroughly incompetent, and the court erred in not removing her for that reason.

By the terms of the will the children of the decedent, with the exception of Mrs. Cocke, were to live upon the place, and the trustee was directed to discharge the liens by the operation of the place, and the net income was to be disbursed equally among the four daughters during their lifetime, and at their death the fee was fixed in the grandchildren of the testator. By item 2 of the will the trustee was required to keep an accurate account of expenses and costs of operation of the property, including repairs, replacements of destroyed property, and expenses of growing crops thereon. By item 4 of the will a legacy of $10,000 was devised to two nieces, and provision was made for the payment of the legacies with the request that the payment be deferred until the indebtedness secured by liens was paid. Item 5 provided for the division of the net profits of each year's operation among Mrs. Alexander, Nell Johnson, Josephine Johnson, Baronece Jenkins Kimbrough, and Ester Jenkins Jones, this distribution to continue until the specific bequest of $10,000 had been made. After the bequest to the two nieces had been fully paid, the trustee was directed to divide the net profits into four equal parts, one-fourth each to Minnie Lee Alexander, Nell Johnson, Josephine Johnson, and Kate Cocke. By item 8 of the will the trustee was vested with the right to sell or mortgage the personal property therein conveyed whenever in her judgment the same was advisable, after the death of the decedent, provided the profits of the said sale or mortgage were invested in other personal property necessary to be used on said plantation or on improvements therein. By item 10 the trustee was authorized to renew any lien but not enlarge it. The trustee was prohibited from executing a deed of trust or mortgage on the crops growing, or to be grown, in any year in excess of an amount which would equal reasonable rent

on said land. By item 11 the annual distribution of the net profits of the land was to continue during the natural life of all the children named, and in case of the death of any, the children of such were to be paid the distributive share of the deceased parent. By item 13 the testator made it clear that it was his intention to devise to his four children a life interest in the net income from the property in trust, subject to specific bequests, with the fee in said property to vest in his grandchildren living at the time of the death of their mother, each grandchild to share equally. Item 14 provided that when all the children had died and the youngest grandchild had become of age, the property might be divided in kind or partitioned between the grandchildren then living. Item 17 provided that $50,000 of life insurance be applied by the trustee on the payment of his debts. By item 18 he provided that his children might live on the land, except Mrs. Cocke. By item 20 he provided that the trustee should permit his children to examine the books of the plantation at any time, and should render an accounting showing receipts and disbursements, and required that a bond be executed. By item 21 the testator directed the trustee to maintain said property under the name of J. N. Johnson Plantations, to have the same assessed under said name, to pay taxes under said name, and to operate the property under said name. The foregoing recitals are merely descriptive and not a construction of any item of the will.

1. Within a few days after appointment, Mrs. Reedy entered into a written contract with her father leasing the land to him for $12,000 a year, and, in addition, providing that her father, J. L. Alexander, should keep up repairs on the place. She also sold to her father the personal property on the plantation used in operating it theretofore, together with some feedstuff, for about $7,000, of which amount $5,000 had been paid at the time of the trial. This contract of sale permitted the trustee

to repurchase at her option the personal property from her father at a reduced price on the termination of the lease. The chancery court approved the lease of the land to the trustee's father, and the sale of the personal property, by its orders upon her ex parte petitions, without process upon any of the parties interested and without having a construction of the will by the court to the effect that the trustee was authorized to lease the property instead of operating it personally. The evidence shows that the fixed charges—annual payments on the mortgages, taxes, compensation to the trustee and her attorney—were in excess of $10,000.

The record in the case of Alexander v. Hancock, supra, was made a part of the record in this case. From the opinion in that case it is seen that after the death of the testator Mrs. Alexander, with the assistance of her husband, made a splendid showing in the management of the estate, by the operation thereof with tenants and share croppers, and had discharged a considerable portion of the debt, aside from the $50,000 devoted to that purpose. The record shows further that when Mrs. Reedy was managing on her first appointment she filed her annual account for the year 1934, in which she showed, by the same kind of operation, the net profits of such operation to be $21,000. Her father having assisted her, and the court relying, as will be seen from the opinion, upon the fact that J. L. Alexander, the father and husband, had successfully managed the plantation, it acted upon the assurance that he would continue to assist his daughter in the management of the place. It will be seen at a glance that the mortgages on the place were long-term loans, a major portion to the Federal Lank Bank, and had been renewed and extended just before, or about the time, Mrs. Reedy entered upon her second trusteeship, and that there would be very little for the payment of the specific legacies or for a distribution, and that the discharge of the indebtedness probably would run beyond

the period of the lives of the four daughters, whose only interest is during their lifetime. On the other hand, by leasing the land to her father, Mrs. Reedy rid herself of many of the duties of a trustee in the active management and operation of this large estate of more than 3,000 acres.

It will be observed from the opinion in the case of Alexander v. Hancock, supra, that this court found that by the trustee's operation of the plantation, with the assistance of her husband, a remarkable reduction was made in the amount of indebtedness of the estate. This management had continued from 1927 to 1933. Also let it be noted that Mrs. Reedy's final account of her first trusteeship showed a net profit of $21,000 for the year's operation. By leasing the plantation and thereby permitting her father to make the profit for the personal operation thereof, Mrs. Reedy enhanced her chances to inherit a share of the gains.

Mrs. Reedy and her counsel say that when she came into the second trusteeship in January, 1936, the workers on the plantation were disturbed and moving off the place; that she had no money with which to operate; that after securing every possible bid they could, J. L. Alexander was the best bidder for the rental of the place for the three years; and that it was impractical to rent it for one year in that condition. It is to be noted that Alexander produced 1,040 bales of cotton the first year of his lease, and in August of the second year had a good crop. They admitted that it was necessary for Mrs. Reedy to execute a subordination and nondisturbance agreement by which the estate, through the trustee, waived, in effect. its landlord's lien in the sum of $15,000 in order that J. L. Alexander might borrow that amount to finance the place during the year 1936. He secured that loan by a mortgage on the crop and personal property. The waiver of January 29, 1936, included any other loans made by the Indianola Production Credit Association, and a like waiver was executed in February, 1937.

These waivers were authorized by the chancery court. It will thus be seen that the trustee secured by her waiver the furnish for her father; certainly the trustee could have done as well.

This court relied upon the fact that J. L. Alexander was to advise his daughter as trustee in the management of this large estate, and although he evidently had no trouble in securing workers in January, 1936, yet the inability to secure farm hands is one of the reasons Mrs. Reedy assigns for making the lease. There is evidence that the land was worth $10 or more an acre per year as rent; and there is also evidence that hands were easily obtained in that vicinity in January of that year. No good reason can now appear why, if Alexander had continued to advise and assist his daughter in the interest of the estate, considerable profit would not have been made by the trustee for the discharge of debts, so that those who were interested in the income from the place during their lifetime would soon have had the indebtedness paid and thereupon been entitled to a large distribution from the income.

However, the will was construed without process on all the parties in interest, remaindermen, and what we will call life tenants. Noting the language of the will, to which we have called attention, it is a very grave question whether or not the testator intended that the lands should be leased for a term of years or should be operated by the personal management of the trustee. The interested parties not being before the court, neither the action of the trustee in construing the will, nor the construction placed on it by the chancellor, will be binding on those not made parties to this proceeding. For that reason we will not now construe the will, as this is most important to all the beneficiaries named in the will and especially to the children of the decedent. Marx v. Hale, 119 Miss. 410, 81 So. 119; Kendrick v. Kendrick, 135 Miss. 428, 100 So. 181.

2. On the contention that the personal property was

sold and the proceeds not reinvested either in the purchase of other personal property for use on the place, or in improvements thereon, but has been expended either in payment of debts or in payment of small distributions to the beneficiaries named in the will, a serious question is raised. For the reason given above on the first point, we shall not at this time construe the will. Most emphatically we say, however, that a will should not be construed where the interests of the beneficiaries are concerned without process upon them.

3. We think the examination of Mrs. Reedy as an adverse witness by the appellants disclosed beyond doubt that she is not competent to manage this trust estate. When she was reinstated as administratrix and trustee by this court, it was upon the good showing made by J. L. Alexander. At that time, so far as this court knew, Mrs. Reedy was unmarried. At or before the time this court decided the former case she had married, and her husband was domiciled in Birmingham, Ala., and for more than two years he has lived in New Orleans, La.; he is a traveling salesman and his territory is within and without that city. Mrs. Reedy testified that she came to the plantation and spent about one week each month there.

Her testimony shows that she did not know that her father had acquired a title to 160 acres of the Washington county land. It appears, however, from the testimony of her attorney that J. L. Alexander had released his title to the estate, although that release or quitclaim deed was not of record. She did not know anything about the status of the "Union Central Mortgage place," nor that it had become delinquent for taxes, nor does it appear that she was concerned even on the witness stand. She thought she was involving the estate for $27,000 for a renewal of the loan with the Union Central Life Insurance Company. Her attorney testified that such was not the case, that the loan was to be renewed without obligation or liability on the part of the estate. She knew

nothing of the $1,500 claim which the estate had against a former tenant; and nothing of the details of a claim against a gin company on stock; nor does it appear that any steps had been taken by her as administratrix de bonis non for the collection and preservation of these items. At the time of the trial she was about twenty-eight years old. Her lack of knowledge of the actual management and control of the plantation, even if she had been released from the arduous duties of operating the plantation as it had formerly been operated profitably by her father and mother, is deplorable. In other words, referring again to the opinion in the former case, she presents an exact picture of Mrs. Hancock as delineated by this court in that case in reference to the removal of the latter. As a matter of law, her domicile is that of her husband—New Orleans—and if upon a construction of the will it should be held that the lands should be operated by lease or otherwise, her evidence discloses that she is incompetent so to do. We do not base this conclusion upon any one of the illustrations we have outlined, but upon her entire lack of knowledge of the real condition of the estate from all of her evidence. In any event, she is not competent to act as trustee herein and should be removed.

It is urged upon us that Mrs. Reedy should be removed for the further reason that there is hostility between these parties litigant, the trustee and the cestui que trust. In view of the fact that this is the fourth time these parties have litigated in this court with reference to this estate, on matters growing out of its administration, we are constrained to believe that there is war rather than peace.

It is unfortunate that there must be another change in the management of this estate but in the interest of the entire estate, taking into consideration the rights of all parties who have beneficial interests therein, we think this trust estate should be managed by a competent trustee in order to carry out the intention of the testator.

In the case at bar Mrs. Reedy and her counsel were the main witnesses. Mr. Cooper, her attorney, evidenced a thorough knowledge of the many complicated matters which have arisen in the course of the management of this estate, but the responsibility of directing the operation of these farms, and the matters arising collaterally and in connection therewith, rests upon the trustee. She should have judgment concerning such operation and exercise it. There is no reflection upon the integrity of Mrs. Reedy, nor upon her attorney. The management and operation of a large estate in the delta, with large liens and debts to be discharged by the operation of farms, in our judgment, requires skill and ability in order that all interests therein may be conserved and preserved.

An order will be entered here removing Mrs. Catherine Alexander Reedy as administratrix de bonis non with will annexed and as trustee of this estate, and remanding the case to the lower court that the chancellor may carefully select and appoint a trustee who can preserve the estate in the interest of all the beneficiaries therein.

Reversed, decree here remanded with directions.