506 So.2d 293 (1987)
Marion L. COSTELLO, Executor of the Estate of Linnie Hall, Deceased
v.
W.C. HALL, Jr.
No. 56571.
Supreme Court of Mississippi.
April 29, 1987.
*294 Landman Teller, Jr., Teller, Chaney & Rector, Vicksburg, for appellant.
David M. Sessums, Varner, Parker & Sessums, Vicksburg, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and SULLIVAN, JJ.
DAN M. LEE, Justice, for the Court:
Linnie B. Hall, the testatrix whose will is at issue in this case, died at Vicksburg Medical Center on September 30, 1982. Her Last Will and Testament, written during her final illness on September 15, 1982, was filed with the Chancery Court of Warren County on October 1, 1982, by Marion Costello, Mrs. Hall's brother and executor. On October 8, 1982, Mrs. Hall's husband, W.C. Hall, filed a Petition for Contest of Will, alleging lack of mental capacity and undue influence.
The chancery court ordered a bifurcated hearing to determine: 1) whether the will should be upheld; and 2) whether Mr. Hall had the right to renounce the will. The chancellor ultimately found that Mrs. Hall had the requisite mental capacity to make a will, but held that the proponents of the will had failed to overcome the presumption of undue influence; but, of course, did not reach the renunciation hearing. The will contest was sustained and the will removed from probate. This appeal followed, with Mr. Costello assigning as error:

I.
The lower court erred in finding that there was an applicable confidential relationship existing which gave rise to a presumption of undue influence.

II.
The lower court erred in concluding that Appellant had failed to overcome that presumption, even if one did exist, by clear and convincing evidence.

III.
The lower court erred in not upholding the Last Will and Testament of decedent dated September 15, 1982, as probated.
Additionally, Mr. Hall has cross-appealed, assigning as error that the lower court erred in refusing to remove Marion Costello as executor of the estate of Linnie B. Hall, deceased.
We conclude that the contentions of the appellant have merit, and, thus, reverse and render as to undue influence and remand this case for the renunciation hearing not yet held. We affirm on cross-appeal.
At issue in this case is whether Marion Costello improperly influenced his sister, Linnie Hall, to write a will leaving the bulk of her property to him and leaving her husband only $10.00. To resolve this issue, the parties presented evidence to the chancellor regarding Mrs. Hall's relationship with her husband and her family. A summary of that testimony follows:
W.C. and Linnie Hall married on April 4, 1970, when Mrs. Hall was about 54 years old, and Mr. Hall about 47. Prior to the parties' marriage, Mrs. Hall apparently had some small amount of money and property. *295 She was also working, although she quit her job sometime after their marriage. Mr. Hall worked as a tool and die maker.
Mrs. Hall was an alcoholic, and the medical records submitted reveal that she had been diagnosed as having cirrhosis of the liver several years before her final illness. Mr. Hall was also a heavy drinker, and Mrs. Hall's medical records indicate that her failure to quit drinking might be partly attributable to him.
Mr. and Mrs. Hall had no children, although Mr. Hall had children and grandchildren by a previous marriage. Mrs. Hall had two sisters and two brothers, all of whom appear to live out of state.
On May 26, 1981, attorney J. Stanford Terry prepared a will for Mrs. Hall, in which she left Mr. Hall only a 1/4 interest in her real estate. She also left several individual bequests, and the remainder to her brother, Marion Costello. At the same time, Mrs. Hall executed a power of attorney in favor of Marion Costello.
A few months later, on September 25, 1981, Mrs. Hall executed another will leaving W.C. Hall a legacy of only $10.00, making several legacies and bequests to family members, and leaving the remainder of her estate, again, to Marion Costello. Among the individual gifts she left were legacies of $1,000.00 each to her two step-grandchildren. Mr. Terry, who also drafted this will, testified later that he carefully explained to Mrs. Hall the possible ramifications of attempting to exclude her husband, which was the reason for the $10.00 legacy.
On May 9, 1982, Mrs. Hall was admitted to the emergency room at Vicksburg Medical Center with septicemia. Hospital records reveal that she arrived by ambulance, clad in only a urine and feces-stained sheet. According to testimony that Mrs. Hall gave at a later deposition, Mr. Hall refused to help her dress after she collapsed on the floor of their bedroom, and merely called an ambulance for her. A friend, Mrs. Corbin, is shown on the hospital records as having given Mrs. Hall's history to the medical attendants, although Mr. Hall's signature is purportedly on the admission documents. The records indicate that Hall visited his wife on some occasions during this stay at the hospital; however, his visits were ultimately forbidden by Dr. Karl Hatten, Mrs. Hall's physician, because he was upsetting Mrs. Hall. Mrs. Hall was successfully treated for this illness and she was discharged from the hospital on June 11, 1982. Upon discharge from the hospital, she stayed at the Corbin home.
On June 3, 1982, Mrs. Hall filed for divorce, on grounds of cruel and unhuman treatment and habitual drunkenness. She later stated that she had been put out of her house by her husband, and that he had moved another woman into it.
On September 4, 1982, Mrs. Hall was again admitted to the Vicksburg Medical Center. The diagnosis was impending hepatic coma  a common end result of cirrhosis of the liver. She ultimately did become comatose, responding only to painful stimuli by September 8. This condition continued until September 14, when she became awake and alert.
Mr. Hall did not visit his wife during this hospitalization. Other family members, including Marion Costello (a resident of the State of Washington), were noted by the staff as being in regular attendance and very supportive and caring of Mrs. Hall.
During the period of consciousness beginning on September 14, Mr. Costello contacted Mr. Terry about revising Mrs. Hall's will. Terry made the revision, which changed only the $2,000.00 legacy of the two step-grandchildren and gave it, instead, to the Corbins. He took the will to the hospital on September 15. Before talking to Mrs. Hall about the new will, Terry had Dr. Hatten examine Mrs. Hall and determine that she was competent to execute the document. After Hatten determined that Mrs. Hall could sign the will, Terry took it into her room for her execution.
At the same time that the new will was executed, Terry had Mrs. Hall execute a new power of attorney. This document was prepared on his own initiative, and included language allowing the power to continue despite any subsequent disability. *296 Terry stated that he prepared the document to conform to a change in the law since the first power of attorney was signed in 1981.
Unfortunately, Mrs. Hall's recovery was short-lived. On September 17, she began having complications and, on the 20th, she lapsed back into a hepatic coma. Although her comatose state waxed and waned for about another week, by the 28th she became unresponsive. In the early evening of September 30, 1982, she began suffering seizures, and, a few hours later, died.
During Mrs. Hall's final illness, Marion Costello used his power of attorney to add himself to Mrs. Hall's savings accounts. Five days after her death, on October 5, 1982, he closed them, paid off an outstanding loan to the bank, and had $24,580.50 transferred to his account in Spokane, Washington. When Mr. Hall became aware of these actions, he obtained a Fiat ordering Costello to appear regarding his handling of the assets of Mrs. Hall's estate. At a hearing on September 14, 1983, the court held that the power of attorney granted to Costello created a fiduciary relationship and raised the presumption of undue influence. He ordered Costello to return the assets of the estate to Mississippi and to post a bond of $26,000.00.
In holding that the September, 1982, will should be removed from probate, the trial court found that Mrs. Hall had the requisite mental capacity to execute the will, stating that the testimony of Dr. Hatten and Mr. Terry was conclusive on the subject. However, with regard to the claim of undue influence, the chancellor made the following finding:
The Court finds that a fiduciary relationship existed between the Deceased and her brother ... arising out of the Power of Attorney... . As a result, the proponents of the will must prove ... that there was no undue influence exercised.
...
The elements that must be proved by clear and convincing evidence are stated to be; (Murray v. Laird [,446 So.2d 575 (Miss. 1984)] ...)
1. Good faith on the part of the grantee/beneficiary.
2. Grantor's full knowledge and deliberation of his actions and their consequences; and
3. Advice of (a) competent person (b) disconnected from the Grantee and (c) devoted wholly to the grantor/testator's interest ...
Mr. Terry did not confer with Mrs. Hall prior to drafting the 15 September 1982 Will, and Mr. Costello may have been present when it was executed.
Under these circumstances, this Court is unable to say that the absence of undue influence has been proven by clear and convincing evidence... .
In its effort to faithfully follow the law as laid down by the Supreme Court, this Court reaches a result contrary to the expressed wishes of the Decedent over a period of some sixteen months during marriage and separation  for lack of proof by clear and convincing evidence of the absence of undue influence. (emphasis added)
Thus, the chancellor below found that: 1) a power of attorney, in and of itself, creates a confidential relationship; 2) a confidential relationship automatically raises the presumption of undue influence; and 3) the proponents of the will cannot rebut the presumption of undue influence by an unequivocal expression of the testator's intent, if the beneficiary is present when the will is signed and the testator's attorney does not confer with him. We conclude that the learned chancellor relied on too mechanical an application of our law on undue influence, and, therefore, reverse this holding.

I. DOES A POWER OF ATTORNEY CREATE A CONFIDENTIAL RELATIONSHIP?
The trial court found a fiduciary relationship arose from the execution by Mrs. Hall of a power of attorney in favor of her brother, Marion Costello. That holding relied on the case of Weston v. Estate of Lawler, 406 So.2d 31 (Miss. 1981), aff'd, 451 So.2d 739 (Ms. 1984), where the executor *297 of the contested will held a power of attorney from the testator, and was a trustee under the will to pay trust income to his (the trustee's) relatives. There, we stated that, "Undue influence over a testator, while not exercised by a beneficiary under the will, may be done so through an agency or a third person." Id. at 34. And, as we held in VanZandt v. VanZandt, 227 Miss. 528, 86 So.2d 466 (1956), the relationship between principal and agent is a fiduciary one. However, Lawler does not stand for the proposition that the mere granting of a power of attorney automatically creates a confidential relationship raising the presumption of undue influence, since there were other relevant factors in Lawler. Specifically, the facts showed that the grantor of the power of attorney lived with the grantee and his family, who were the ultimate beneficiaries under the will.
Other jurisdictions are split on the question of whether a power of attorney creates a confidential relationship as a matter of law, with some states holding that it does, Parker v. Spurlin, 227 Ga. 183, 179 S.E.2d 251 (1971); In re Estate of Bankovich, 344 Pa.Super. 520, 496 A.2d 1227 (1985); Askew v. Askew, 619 S.W.2d 384 (Tenn. App. 1981); and other states holding that it is only one factor, although a strong one, in determining whether a confidential relationship exists. In re Estate of MacPhee, 187 So.2d 679 (Fla. Dist. Ct. App. 1966); Matter of Estate of Herm, 284 N.W.2d 191 (Iowa 1979); Peninsula Methodist Homes and Hospitals v. Cropper, 256 Md. 728, 261 A.2d 787 (1970). Matter of Ferrill, 97 N.M. 383, 640 P.2d 489 (1981).
We are loathe to conclude that the grant of a power of attorney, in itself, creates a confidential relationship between the grantor and the grantee, as a matter of law. Many persons execute these instruments in an attempt to plan for future incapacity. Their reasons for granting the power to one relative over another may be indicative merely of the grantor's assessment of the grantee's business acumen. To hold the legatee who has also been granted a power of attorney to a different standard of proof in a will contest, without any more evidence of the relationship between him and the grantor, seems to be a harsh and unjust result. For that reason, we find error in the holding below that imposed the presumption of undue influence as the result of the power of attorney granted to Marion Costello from Mrs. Hall.

II. DID THE RELATIONSHIP BETWEEN COSTELLO AND MRS. HALL MERIT THE PRESUMPTION OF UNDUE INFLUENCE?
The chancellor below, in a well-intentioned attempt to fairly apply the law of undue influence to this case, shifted the burden of proof to show lack of undue influence to Costello solely on the basis of the power of attorney. The relevant part of the court's opinion follows:
The Court finds that a fiduciary relationship existed between the Deceased and her brother, Marion Costello, arising out of the Power of Attorney executed May 26, 1981, Weston v. Estate of Lawler, 406 So.2d 31 [(Miss. 1981)]. As a result, the proponents of the will must prove, by clear and convincing evidence, that there was no undue influence exercised on the Deceased as to the disposition of her estate. [emphasis added]
Thus, the burden was shifted to Costello without any finding that he abused the relationship between himself and his sister by procuring the will, by asserting dominance over a dependent testatrix, or by, in any way, substituting his intent for the intent of Mrs. Hall in disposing of her property. This holding was in error.
The "polestar consideration" in our review of a will contest is to give effect to the intent of the testator. Tinnin v. First Bank of Mississippi, 502 So.2d 659 (Miss. 1987); Deposit Guaranty National Bank v. First National Bank of Jackson, 352 So.2d 1324 (Miss. 1977); In re Estate of Granberry, 310 So.2d 708, 711 (Miss. 1975). ("When the intent of the testator has been... ascertained, all minor, subordinate and technical rules of construction must yield to the paramount intent thus ascertained.") The effect of a charge of undue influence *298 is to suggest that the will reflects the intent of the beneficiary, and not of the testator. "Undue influence in the matter of executing a will must be the substitution of another's will for the will of the testator." Barnett v. Barnett, 155 Miss. 449, 457, 124 So. 498, 500 (1929). Here, it is obvious from the facts of the case that the will presented for probate reflects the intent of its maker, and the chancellor so found.
The cases in which we have recognized the presumption of undue influence present factual scenarios where there was more than just a legal or domestic relationship between the testator and the beneficiary. There must also be an abuse of that relationship relating to the execution of the will. As Justice Hawkins wrote in Hendricks v. James, 421 So.2d 1031, 1041 (Miss. 1982):
Whenever there is a relation between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter's dependency upon the former, arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such relationship as fiduciary in character. [emphasis added]
In the case of In re Will and Estate of Varvaris, 477 So.2d 273, 278 (Miss. 1985), Justice Hawkins, again writing for the majority, wrote "in determining whether or not a fiduciary or confidential relationship existed between two persons, we have looked to see if one person depends upon another." [emphasis added] To like effect was Justice Prather's opinion in Murray v. Laird, 446 So.2d 575, 578 (Miss. 1984), that "The confidential relationship arises when a dominant overmastering influence controls over a dependent person or trust, justifiably reposed." The term "confidential relationship" was defined in the case of In re Estate of Bilello, 317 So.2d 916 (Miss. 1975) as "not confined to any specific association of parties but appears when `on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust... .'" Id. at 917.
Furthermore, even when a confidential relationship can be said to exist between the parties, as defined by the cases above, the beneficiary under the will must have used that relationship for his personal gain or to thwart the intent of testator. This rule of law was recognized in Croft v. Alder, 237 Miss. 713, 723, 115 So.2d 683, 688 (1959), where the Court stated that "where a confidential relation exists between a testator and a beneficiary under his will, and the beneficiary has been actively concerned in some way with the preparation or execution of it, the law raises a presumption that the beneficiary has exercised undue influence over the testator... ." [emphasis added]
The chancellor's holding on the power of attorney would suggest that he did not consider any evidence which might have indicated that Mr. Costello dominated his sister, or that he, through the dominance, procured the will in question. However, assuming that the evidence presented by the will's opponent might have influenced his decision, we review it here. The record shows that Mr. Terry, the attorney who prepared the September, 1982, will, testified that Mr. Costello came to his office to ask him to draft it. There was also some evidence that Mr. Costello was handling some of his sister's affairs while she was in a coma. That evidence consisted of Costello's once questioning Terry about his sister's impending divorce, and his adding his name to his sister's savings accounts.
We do not believe that this evidence mandates a holding that a confidential relationship existed between Costello and Mrs. Hall. Even if Costello aided in procuring the will, this procurement was not to his advantage, since he gained nothing by the September, 1982, will. Will of Polk, 497 So.2d 815, 818 (Miss. 1986). Additionally, Mrs. Hall's failing health required that Costello assist her in procuring Mr. Terry's services to write the will. The situation is much the same as that of In re Will and Estate of Varvaris, 477 So.2d 273, 279 (Miss. 1985), where the primary beneficiary contacted and accompanied the attorney to *299 visit the testator in a nursing home. The court declined to use that evidence to find a confidential relationship between the testator and the beneficiary, stating that "A person of advanced years living in a nursing home is undoubtedly dependent upon others in one degree or another. Yet there is no proof in this record that Emanual [the testator] looked to Steve [the beneficiary] to care for his personal needs, to tend to him, or to handle his affairs." Id.
There was no finding in this case that Mr. Costello exerted a dominant influence over Mrs. Hall, or that he used any influence over her to negate her free will in leaving him the bulk of her estate, nor was there evidence in this record that would support such a finding. Absent such evidence, we must conclude that the chancellor below was in error when he mechanistically held that Costello had unduly influenced his sister to prepare a will that did not truly reflect her intent as to whom she wanted to leave her wordly assets and bounty.

III. WAS THE PRESUMPTION OF UNDUE INFLUENCE REBUTTED BY CLEAR AND CONVINCING EVIDENCE?
In light of this Court's holding that the presumption of undue influence was improperly applied, it is not really necessary to reach this assignment of error. However, we would note that, while the chancellor correctly stated the test for rebutting this presumption, from Harris v. Sellers, 446 So.2d 1012, 1014-15 (Miss. 1984), he incorrectly applied it. The holding of the trial court centered primarily around the fact that Mr. Terry did not confer with Mrs. Hall before he drafted the September, 1982, will, and that Mr. Costello might have been present when it was executed. We conclude that the trial court did not consider other evidence in the record that was relevant to the test of undue influence.
The test enunciated in Harris consists of evidence of 1) good faith of the beneficiary; 2) the grantor's understanding of his actions; and 3) independent advice. As to the first element, there was ample evidence in the record that the execution of the 1982 will was done openly and in accordance with the previously expressed intent of Mrs. Hall. Although Mr. Costello took no part in having Terry draft the instrument, his good faith may be demonstrated by the fact that he did not personally benefit from it. The second element, the grantor's understanding, was demonstrated by the testimony of her doctor that she had sufficient cognitive ability to understand the general terms of the will. Furthermore, the terms were virtually unchanged from those of the prior year, when Mr. Terry testified that he discussed the will with Mrs. Hall at length. Also, the terms of the will were not unusual or unnatural; Mrs. Hall had a plausible explanation for excluding her husband and his grandchildren, and including the Corbins. Finally, as to the element of independent advice, even the chancellor recognized that the 1982 will was, at most, a codicil to the 1981 will. The major provisions of the will were drafted at the time when Mrs. Hall had a lengthy conference with her attorney. The fact that Mr. Costello was in the room when the will was executed does not, in itself, cause the will to fail this element. Will of Polk.
For these reasons, we conclude that, even if this case had called for the imposition of the presumption of undue influence, Mr. Costello did present clear and convincing evidence that would have overcome the presumption. Nowhere is that more clear than in the words of the chancellor himself, when he stated that, "In its effort to faithfully follow the law ... this Court reaches a result contrary to the expressed wishes of the Decedent. ..." We note that, if it is manifestly clear to the trial court that the intent of the testator is reflected in the will, then it should be also manifestly clear that there was no undue influence.

IV. SHOULD THE TRIAL COURT HAVE REMOVED MR. COSTELLO AS EXECUTOR?
Traditionally, the chancellor enjoys a great measure of discretion in this area. *300 Matter of Estate of Flowers, 493 So.2d 950 (Miss. 1986); Stribling v. Washington, 204 Miss. 529, 37 So.2d 759 (1948); Nutt v. State, 96 Miss. 473, 51 So. 401 (1910). Removal is warranted where the executor fails to "bring to the management of the estate the degree of care that an ordinary person would exercise in the conduct of his or her own affairs." Harper v. Harper, 491 So.2d 189, 203 (Miss. 1986); Hancock v. Reedy, 181 Miss. 830, 180 So. 81 (1938).
Such was not the case here. The only evidence of possible mismanagement was the closing of Mrs. Hall's savings accounts and the removal of the money to Washington. The chancellor remedied that situation by ordering the return of the money and the posting of a bond in excess of the amount of money involved. In so protecting the estate, the chancellor's failure to take further action against Mr. Costello should be left to his discretion.
We therefore find no merit in the cross-appeal.
REVERSED AND REMANDED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.