McRAE, Justice, for the Court:
This appeal springs from an unsuccessful motion to set aside the 1980 will of Grace B. Grantham, deceased. The proceedings were filed in the Chancery Court of Laud-erdale County, wherein Judge George D. Warner, Jr., entered his Opinion and Judgment on May 16, 1990, dismissing with prejudice the Complaint to Set Aside Will.
The plaintiffs/appellants are all either nephews and nieces of the testatrix or descendants of deceased nephews and nieces. The defendants and beneficiaries under the will are John Roberts, executor of the estate, and William Goodwin. Testatrix Grantham was Goodwin’s great aunt and Roberts’ aunt. After a hearing, the court below found for the proponents of the will and denied the motion to set aside. On appeal, the appellants argue that: (1) Roberts and Goodwin occupied a confidential or fiduciary relationship with Grantham; (2) both participated in the procurement, preparation, and/or execution of the will, and that such actions combined with the fiduciary relationship raised a presumption of undue influence; (3) a presumption of undue influence arose because Roberts held a general power of attorney from Grantham at the time of the execution of the will; and (4) the beneficiaries/proponents failed to overcome the presumption of undue influence by clear and convincing evidence.
We find that although a confidential relationship existed between Grantham and the defendants/appellees, no abuse of the relationship occurred. The chancellor did not err in denying the motion to set aside the will of Grace Grantham. Accordingly, we affirm.

FACTS

Testatrix Grantham was born on April 27, 1900. She never had any children, and her husband predeceased her. She was also predeceased by her parents, as well as her eight brothers and sisters. She was not illiterate, but she never worked outside the home and was unable to drive. Throughout her life, it seems, she relied on others.
On August 18, 1980, Grantham moved into the Kings Daughters Nursing Home in Meridian, Mississippi. Goodwin lived only five minutes from the nursing home and would visit Grantham regularly and make arrangements for her to go to the doctor if necessary. Roberts lived in Texas and saw Grantham less frequently. He nevertheless handled all of Grantham’s money and business affairs, as he had done since 1972, traveling from Texas to Meridian about once a month. Roberts paid the taxes on Grantham’s land from her money, paid her nursing home bills, and collected the rent money from the land she owned. He deposited all of this money in her account at Merchants & Farmers Bank.
On October 23, 1979, Grantham had given Roberts a power of attorney.[1] Roberts testified that he used this power of attorney mainly to sign checks for Grantham because she had a hard time writing her name because of her physical condition. It is noteworthy, however, that Roberts had been writing all of Grantham’s checks and tending to all of her business before the power of attorney was ever executed.
Soon after entering the nursing home, Grantham broke her hip. Roberts, Goodwin, their wives, and Evelyn Goree, one of the appellants, found a will dated 1971 among Grantham’s personal papers while looking for insurance forms. All of the *1222 parties present read the will. A copy of the 1971 will was not available at the hearing below, but according to Evelyn Goree’s recollection, the will named three beneficiaries: Fannie Mae Kennedy, Velma Higgins, and Nona Hopper. These women were Grantham’s three oldest nieces.
Margaret Inmon, also one of the plaintiffs, testified that some time after the old will was discovered, Roberts called her and said “he sure wished that that will could be changed and didn’t I.” Goree similarly testified that shortly after finding the old will, Roberts told her, “We need to get that will changed or they will be filthy rich.”
Goodwin testified that at some point late in 1980, on one of his regular visits to Grantham, she told him that she needed to go see her lawyer, Mr. Spinks.[2] According to Goodwin, she mentioned she wanted to change her will, but she didn’t say anything about the particular changes she wanted to make. Goodwin called Roberts, explained Grantham’s request, and asked Roberts to come to Mississippi. Roberts called Mr. Spinks, the attorney, and made an appointment. Roberts, his wife, and Goodwin met at the nursing home and drove Grantham to her attorney’s office on the appointed day. Grantham was in a wheelchair and needed to be helped into the car.
Roberts also testified about the events leading up to the execution of the new will. According to Roberts, everyone went inside the attorney’s office. Mr. Spinks, the attorney, explained to Grantham that she would have to destroy the old will before she could make up a new one. She tore it into four pieces and handed it back to the attorney. He destroyed it further, at her request, and threw it in the wastebasket. The attorney then asked her who she wanted to leave her assets to, and she pointed to Goodwin and Roberts, calling them by name. The attorney prepared the new will and read it to Grantham. Apparently, the attorney never discussed Grantham’s assets with her, nor did he ask who all of her relatives were. After the will was read to her, Grantham signed it and then Spinks signed as a witness, as did his secretary.
Roberts’ wife offered a somewhat different account. She testified that when they entered the attorney’s office Mr. Roberts told Spinks that Grantham wanted to change her will and leave all of her property to Goodwin and him. None of the other witnesses corroborated this testimony.
Spinks, the attorney, testified that when Grantham came to his office he asked her if she wanted to change her will and she said, “Yes.” He summarized the contents of the old will to her, when it was made, who the beneficiaries were, and who witnessed it, and asked her if she wanted to change it. She nodded and when asked who she wanted to leave her possessions to, she pointed to Roberts and Goodwin. Spinks also testified that he never had any discussions with Grantham outside the presence of Roberts, Goodwin and Roberts’ wife. He noted that according to Grant-ham’s own explanation, she wished to change the will because Goodwin and Roberts were the only ones doing anything for her and because they were taking care of her.
Grantham died on October 1, 1984. She left a will dated December 22, 1980, which named only Roberts and Goodwin as beneficiaries. The only property passing under the will was approximately 80 acres near Meridian.[3]
The plaintiffs/appellants subsequently sought to have the will set aside, alleging inter alia, that it was procured through the exercise of undue influence by Goodwin and Roberts. After a hearing, the judge rendered an opinion dismissing the complaint. Regarding the alleged confidential relationship, the court found as follows:
Now, I find specifically by clear and convincing evidence that even if there is a rebuttable presumption of undue influ *1223 ence because of a confidential relationship, because of a power of attorney, it has been overcome, but I specifically find that Mr. Roberts was not in a confidential relationship. The very existence of a power of attorney in all circumstances does not create a confidential relationship.
As to the conduct leading up to the execution of the 1980 will, the court noted:
Just like it is a big pill for the court to swallow that a man goes to the nursing home, Mr. Roberts, and picks up the will for the first time and this man who I am to believe has a scheme to get it all. Question: he is pretty stupid not to tear up the will. Why did he bring it to the hospital and show it to Mrs. Goree? He doesn’t impress me as being that dumb.... Somebody kept up the with lady’s will. There are garbage cans all over town. Who tore up the will? Mrs. Grantham. In the presence of who? Her lawyer. So, I have to now believe that he was a co-conspirator or something because he tore up a good will intentionally? He handed it to the lady, Mr. Spinks said, “This is your old will, now you’ll have to destroy it,” and she tore it in four pieces and, because she was frail, handed it back, and he said, “Do you want me to tear it some more?” and she nodded assent or said, “yes,” and he tore it up some more and threw it in the wastebasket. So he held onto that will a long time before he decided to rope Mr. Spinks into throwing it away, and I am to believe that she intended to die intestate. I can’t believe that, and I don’t believe that.

LAW

A Chancellor’s findings of fact will not be disturbed unless they are manifestly wrong or clearly erroneous, or unless the chancellor applied an erroneous legal standard. Tinnin v. First United Bank, 570 So.2d 1193 (Miss.1990); In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989). If the Chancellor’s findings are supported by substantial, credible evidence in the record this Court will not reverse. Tinnin, 570 So.2d at 1194; In re Estate of Harris, 539 So.2d at 1043. We are here called upon to review three findings of fact in light of the clearly-erroneous standard. First, we must determine whether the chancellor correctly determined that no confidential or fiduciary relationship existed between Grantham and the appellees. Secondly, assuming that a confidential relationship existed, we must determine whether the circumstances surrounding the execution of Grantham’s 1980 will raised a presumption of undue influence. Thirdly, we must decide whether the chancellor erred in finding that if a presumption of undue influence arose, the defendants/appellees’ proof overcame it.
A. DID A CONFIDENTIAL/FIDUCIARY RELATIONSHIP EXIST BETWEEN GRANTHAM AND APPEL-LEES GOODWIN AND ROBERTS?
In several cases this Court has discussed what factors lower courts must consider in determining whether a confidential relationship exists. For example, in Hendricks v. James, 421 So.2d 1031, 1041 (Miss.1982), this Court noted that:
“[w]herever there is a relation between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter’s dependency upon the former, arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such relationships as fiduciary in character.”

Id.

Similarly in Estate of Varvaris, 477 So.2d 273, 278 (Miss.1985), this Court stated that “in determining whether or not a fiduciary or confidential relationship existed between two persons, we look to see if one person depends upon another.”
The chancellor specifically found that no confidential relationship existed between Grantham and Roberts since “[t]he very existence of a power of attorney in all circumstances does not create a confidential relationship.” It is true that the existence of a power of attorney is but one factor to consider in determining whether a *1224 confidential relationship exists. See Costello v. Hall, 506 So.2d 293, 297 (Miss.1987). In the instant case, however, it appears that the chancellor failed to give due regard to other relevant factors such as the following:
1. Grantham was uneducated, could not be left alone, and had to be taken care of by others;
2. Grantham depended on and maintained a close relationship with both Goodwin and Roberts;
3. Goodwin provided her transportation and arranged for her medical care;
4. Grantham’s finances and business concerns were entirely within Roberts’ hands;
5. Roberts and Grantham maintained joint checking accounts and certificates of deposit which contained funds actually belonging solely to Grantham;
6. Grantham’s safe deposit box was established jointly with Roberts;
7. Grantham was extremely weak physically and confined to a wheelchair;
8. Given Grantham’s advanced age and poor health, it is clear that both Goodwin and Roberts were in a position to exercise a dominant influence over her decisions.
Even if, as the chancellor concluded, the power of attorney merely gave Roberts the authority of a glorified check writer, it would be unreasonable to conclude that no confidential relationship existed between Roberts and Grantham given the dominant role Roberts otherwise played in the testatrix’s life. We find that a confidential relationship existed between Grantham and both Roberts and Goodwin. The chancellor’s opinion is manifestly erroneous to the extent it finds otherwise.
B. DID THE CIRCUMSTANCES SURROUNDING THE EXECUTION OP GRANTHAM’S WILL GIVE RISE TO A PRESUMPTION OF UNDUE INFLUENCE?
The existence of a confidential relationship, standing alone, does not give rise to a presumption of undue influence. In re Will of Adams, 529 So.2d 611, 615 (Miss.1988). In addition to the relationship, there must be some showing that the beneficiary under the will abused the relationship either by asserting dominance over the testator or by substituting his intent for that of the testator. See In re Will of Adams, 529 So.2d at 615; see also Costello v. Hall, 506 So.2d 293, 298 (Miss.1987). In Croft v. Alder, 237 Miss. 713, 115 So.2d 683 (1959), we held that a presumption of undue influence can arise where a beneficiary actively participates in the procurement, preparation or execution of the will.
There can be no question but that Goodwin and Roberts actively participated in the procurement of Grantham’s 1980 will. They arranged an appointment with the attorney who drafted the will, they drove Grantham to the lawyer’s office, and they were present when Grantham executed the document. The record clearly demonstrates, therefore, that the circumstances surrounding the execution of Grantham’s 1980 will gave rise to a presumption of undue influence.
C. DID GOODWIN AND ROBERTS OFFER CLEAR AND CONVINCING EVIDENCE SUCH AS WOULD OVERCOME THE PRESUMPTION OF UNDUE INFLUENCE?
When deciding whether the beneficiary under a will has overcome a presumption of undue influence, we employ the three part test set out in Mullins v. Ratcliff, 515 So.2d 1183 (Miss.1987). Under this test, the presumption is overcome if the beneficiary has proven by clear and convincing evidence:
(1) Good faith on the part of the beneficiary;
(2) the testator’s full knowledge and deliberation of his actions and their consequences; and
(3) independent consent and action on the part of the testator.
Mullins, 515 So.2d at 1193; see also In re Estate of Harris, 539 So.2d at 1041-42.
In the instant case, the record contains sufficient proof to satisfy each of the three prongs. Regarding the good-faith requirement, the chancellor found that *1225 Roberts had never misused his power of attorney, and that he had not even reimbursed himself for gas money for the trips from Texas. The evidence also shows that Roberts and Goodwin had been taking care of Grantham for several years before Grantham drafted the new will. Further, there was no evidence that the beneficiaries of the 1980 will were aware of the existence, much less the terms, of the old will until it was found among Grantham’s papers during a search for hospital insurance forms. And when it was found, Goodwin and Roberts freely shared its contents with the other relatives.
The second prong, that the grantor had full knowledge of the deliberations and consequences of her actions was also supported by clear and convincing evidence. Grantham’s doctor testified that in his opinion, she was aware of what she was doing. The attorney offered similar testimony. The only conflicting evidence on this point was provided, not surprisingly, by several of the contestants. The Chancellor was entitled to weigh the evidence and determine that the proponents' witnesses were more credible than those who testified for the contestants.
Lastly, the evidence demonstrates that Grantham exhibited independent consent and action when executing the 1980 will. When attorney Spinks asked her who she wished the beneficiaries to be under the new will, she pointed to Roberts and Goodwin and verbally confirmed her choice. Further, Grantham personally tore her old will into four pieces and then asked Spinks to destroy it further. The case for independent consent and action would have been even stronger if Spinks had requested Roberts and Goodwin to leave the room and if he had questioned Grantham more closely concerning the property she wished to devise and concerning her relationships with other family members. See In re Estate of Harris, 539 So.2d at 1042-43 (proponents of will clearly overcame presumption of undue influence where attorney who prepared will met with testatrix outside presence of beneficiaries and asked testatrix about property she owned and about her living relatives). Given the circumstances of this case, however, the evidence is sufficient to clearly and convincingly show that Roberts and Goodwin did not substitute their intent for that of Grantham.
We hold that the chancellor did not manifestly err in finding that any presumption of undue influence had been overcome by clear and convincing evidence.

CONCLUSION

A confidential relationship existed between Grantham and the beneficiaries of her 1980 will. Further, since Goodwin and Roberts actively participated in the procurement and preparation of Grantham’s will, a presumption of undue influence arose. The record, however, contains clear and convincing evidence that neither Goodwin nor Roberts abused- his confidential relationship with the testatrix. We therefore hold that the presumption of undue influence was overcome and that the chancellor did not err in denying the contestant’s petition to set aside the 1980 will of Grace Grantham.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.

. Mr. Spinks the attorney who prepared the 1980 will also prepared the power of attorney. He has been practicing since 1972.

. The record indicates that Spinks had handled all or most of Grantham’s legal work since the early or mid 1970s.

. Grantham also owned several certificates of deposit at the time of her death. These certificates, however, named Roberts as a joint tenant and thus passed outside the will.