857 So.2d 43 (2003)
MADISON COUNTY, Mississippi; Karl Banks, In His Official Capacity as Supervisor of Madison County, Mississippi and Individually; J.L. Mccullough, In His Official Capacity as Former Supervisor of Madison County, Mississippi; David Richardson, In His Official Capacity as Supervisor of Madison County, Mississippi and Individually; Louise Spivey, In Her Official Capacity as Former Supervisor of Madison County, Mississippi; Luther Waldrop, In His Official Capacity as Former Supervisor of Madison County, Mississippi; W.T. Bill Banks In His Official Capacity as Former Supervisor of Madison County, Mississippi and Individually; Mark Sharpe, In His Official Capacity as Supervisor of Madison County, Mississippi and Individually; and Paul Griffin, In His Official Capacity as Supervisor of Madison County, Mississippi and Individually,
v.
Jessie HOPKINS, In His Official Capacity as Sheriff of Madison County and Individually.
No. 2001-CA-01152-SCT.
Supreme Court of Mississippi.
June 19, 2003.
Rehearing Denied October 23, 2003.
*44 Gary E. Friedman, Jackson, for Appellants.
William E. Spell, Clinton, for Appellee.
Before PITTMAN, C.J., WALLER and CARLSON, JJ.
CARLSON, Justice, for the Court.
¶ 1. Underlying this litigation is the all too familiar and unfortunate contentiousness which can exist between a county board of supervisors and a sheriff concerning budgetary constraints brought about by economic conditions which wreak havoc on a limited county budget and underpaid and overworked employees of the sheriff's department. We are called upon to consider today's case because Madison County has appealed to this Court as a result of an adverse judgment rendered by the Chancery Court of Madison County awarding Sheriff Jessie Hopkins partial reimbursement for legal fees incurred by him as a party in a federal court lawsuit. Finding that the special chancellor erred as a matter of law in awarding fees, we reverse the judgment entered in favor of Sheriff Hopkins and render judgment here in favor of Madison County.

FACTS AND PROCEDURAL HISTORY
¶ 2. At the heart of this appeal is federal litigation commenced by fifty-three (53) employees of the Madison County Sheriff's Department on September 5, 1996, in the United States District Court for the Southern District of Mississippi against Madison County and the individual members of the County's Board of Supervisors asserting violations of the Fair Labor Standards Act ("FLSA"). The employees' main complaint was failure to pay overtime. The employees later amended their complaint to allege, inter alia, a 42 U.S.C. § 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. However, of significant import was that in this same amended complaint, the employees likewise included a claim against Jessie Hopkins in his official capacity as Madison County Sheriff.
¶ 3. Upon responding to the amended complaint, Madison County likewise filed a third-party complaint against Sheriff Hopkins seeking indemnification from the Sheriff individually on the theory that he was an employer or joint employer of the sheriff's department employees and thus, individually responsible for any unpaid overtime to which the employees may be entitled. Sheriff Hopkins, in turn, filed a counterclaim against Madison County alleging that the County's third-party claim against him was nothing short of retaliatory action due to his cooperation with the employees in their efforts to receive unpaid overtime via the judicial process. In fact, quite interestingly, after the employees amended their complaint to add Sheriff Hopkins as a defendant in his official capacity, the Sheriff's privately retained counsel filed an answer on behalf of the Sheriff in his official capacity, admitting all of the substantive allegations which had been made by the employees against the County, Supervisors and Sheriff.
¶ 4. Not to be outdone, Madison County filed a motion to strike the Sheriff's answer (filed in his official capacity) admitting the employees' allegations, and the *45 County likewise filed an answer on behalf of the Sheriff in his official capacity thereby denying the substantive claims of the employees. There's moreSheriff Hopkins, through his privately retained counsel, moved to disqualify Madison County's attorney from representing the Sheriff due to a conflict of interest. The Sheriff claimed that in representing the County and its individual Supervisors as well as the Sheriff, in his official capacity, and in further suing the Sheriff individually for indemnification of the County and its Supervisors in the event of an adverse judgment in favor of the employees, Madison County's attorney had less than undivided loyalty to Sheriff Hopkins. Indeed, the same attorney represented the County and the Sheriff in his official capacity throughout the federal district court trial and the subsequent appeal to the United States Court of Appeals for the Fifth Circuit. The federal district court eventually denied the Sheriff's motion to disqualify the County's counsel and entered an order striking the Sheriff's answer which he had filed in his official capacity through his privately retained counsel.
¶ 5. As the federal litigation gained force, the state courts were not by any means ignored. Eighty-one (81) days after the federal court litigation had been commenced by the employees of the Madison County Sheriff's Department, Sheriff Hopkins, both in his official and individual capacity, filed this action in Madison County Chancery Court against Madison County and the members of the Madison County Board of Supervisors, both in their official and individual capacities. Sheriff Hopkins's attorney for this state court litigation was the same attorney the Sheriff had privately retained to represent him in the federal court litigation. In this state court action, the Sheriff sought chancery court relief by way of an order (1) directing the Supervisors, in their official capacity, to approve and pay for an attorney to represent the Sheriff in the federal court action; or (2) requiring, alternatively, that the Supervisors reimburse Madison County for all monies paid by the County to the attorney representing the Supervisors in the federal court litigation, and enjoining the County from payment of any further expenses incurred by the Supervisors for their legal representation in the federal court action.
¶ 6. As the state court action proceeded in a normal fashion by way of the filing of amended pleadings and discovery, the federal court action was likewise moving forward. On November 20, 1997, the federal district court, Honorable William H. Barbour, Jr., presiding, entered an opinion and order which found, inter alia, that both Madison County, through the Board of Supervisors, and Sheriff Hopkins, in his official capacity and individually, were joint employers of the sheriff's department employees pursuant to the FLSA; that the employees were not entitled to summary judgment on their FLSA liability claim, thus allowing the Madison County defendants the opportunity to present rebuttal evidence concerning overtime work; that the retaliation claims of the employees and Sheriff Hopkins would be dismissed; and, that the employees' 42 U.S.C. § 1983 claims would be dismissed.[1] The federal court order provided that the Madison County defendants' motion for partial summary judgment would be granted in part and denied in part; that Sheriff Hopkins's third-party defendant motion for partial summary judgment would be denied; that *46 the employees' motion for partial summary judgment would be denied; and, that Sheriff Hopkins's third-party defendant motion to strike testimony would be denied. Barfield v. Madison County, Miss., 984 F.Supp. 491, 510 (S.D.Miss.1997).
¶ 7. Having previously bifurcated the proceedings as to liability and damages, the federal district court commenced a bench trial on the liability issue on March 23, 1998, and on March 25, 1998, the district court found, inter alia, that Madison County had violated the FLSA by its refusal to pay the sheriff's department employees overtime; that the employees were due an award of liquidated damages; that application of Mississippi common law to the County's third-party claim against Sheriff Hopkins resulted in the Sheriff being primarily responsible for the unpaid overtime; and, that Sheriff Hopkins must indemnify Madison County for any monetary judgment subsequently entered against the County in favor of the employees due to the FLSA violations. Prior to the commencement of the damages phase of the bench trial, Madison County settled with the sheriff's department employees for $750,000. Consistent with its prior indemnification ruling, the federal district court entered judgment in favor of Madison County and against Sheriff Hopkins for $750,000. After the County filed a motion for attorneys' fees and expenses, the federal district court, relying once again on Mississippi common law, granted the County's motion for attorneys' fees and expenses in the amount of $264,430.32.
¶ 8. On appeal, the Fifth Circuit exonerated Sheriff Hopkins by finding that there was no support in the Mississippi common law for holding an employee of a Mississippi governmental entity liable in "tort type indemnity;" therefore, the Court of Appeals reversed the district court's judgment for Madison County and rendered judgment in favor of Sheriff Hopkins on the County's third-party indemnification claim and the County's claim for attorneys' fees and expenses. Barfield v. Madison County, Miss., 212 F.3d 269, 273 (5th Cir.2000). Sheriff Hopkins had assigned four errors on appeal from the adverse district court judgment: "(1) he was not an `employer' under the FLSA, 29 U.S.C. § 203(d); (2) the FLSA preempts the application of Mississippi common law indemnification; (3) the district court misapplied Mississippi indemnity law; and (4) the district court should have disqualified Madison County's counsel from representing any party in the suit." Id. at 271. Because of its ruling in favor of Sheriff Hopkins on the third-party indemnification issue, the Fifth Circuit stated that "we do not reach the remaining points raised by Hopkins." 212 F.3d at 273.
¶ 9. Armed with this favorable ruling in the federal court litigation, Sheriff Hopkins then turned his attention to this pending state court action by seeking and receiving from the chancellor leave to amend his original complaint. In his amended complaint Sheriff Hopkins sought relief by way of a request that Madison County, through its Board of Supervisors, approve and pay for his attorneys' fees and expenses incurred in his federal court litigation ($54,865.75), plus pre-judgment and post-judgment interest, as well as attorneys' fees and expenses incurred in bringing the state court action.
¶ 10. On June 18, 2001, the chancellor awarded Sheriff Hopkins attorney's fees in the amount of $35,000. The chancellor found Sheriff Hopkins was not entitled to reimbursement for his actions which were adverse to the County. The chancellor held that since Sheriff Hopkins was named as a party in his official capacity, he was entitled to representation to insure his interests were protected. The chancellor *47 concluded that because of the conflict between the County and Sheriff Hopkins, the Sheriff was entitled to reimbursement for a portion of the legal expenses incurred as a result of the federal lawsuit. Judgment in the amount of $35,000 was entered against the County on July 16, 2001. Madison County timely appealed to this Court raising the following issues:
I. WHETHER THE CHANCELLOR RELIED ON THE PROPER LEGAL STANDARD WHEN HE PREDICATED HIS OPINION ON THE DICHOTOMY BETWEEN A SUIT AGAINST SHERIFF HOPKINS IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES.
II. WHETHER THE CHANCELLOR SHOULD HAVE RELIED UPON MISSISSIPPI CODE SECTIONS 25-1-47 AND 19-3-47 WHICH PERMIT, BUT DO NOT REQUIRE, A COUNTY TO PROVIDE A LEGAL DEFENSE FOR A COUNTY OFFICIAL ACTING IN HIS OFFICIAL CAPACITY.
III. WHETHER, BASED ON MISSISSIPPI CODE SECTIONS 25-1-47 AND 19-3-47, HOPKINS HAD THE RIGHT TO BE REIMBURSED FOR HIS ATTORNEY'S FEES EVEN THOUGH THESE CODE SECTIONS GRANT THE BOARD OF SUPERVISORS DISCRETION IN DECIDING WHETHER TO PROVIDE A DEFENSE FOR COUNTY OFFICIALS.

DISCUSSION
¶ 11. This Court's standard of review regarding determinations of a chancellor is well-established.
This Court will reverse a chancellor only when he is manifestly wrong. Hans v. Hans, 482 So.2d 1117, 1119 (Miss.1986); Duane v. Saltaformaggio, 455 So.2d 753, 757 (Miss.1984). A chancellor's findings will not be disturbed unless he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990); Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). Where there is substantial evidence to support his findings, this Court is without the authority to disturb his conclusions, although it might have found otherwise as an original matter. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989). Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee. Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990). The chancellor's decision must be upheld unless it is found to be contrary to the weight of the evidence or if it is manifestly wrong. O.J. Stanton & Co. v. Mississippi State Highway Comm'n, 370 So.2d 909, 911 (Miss.1979).
In re Estate of Johnson, 735 So.2d 231, 236 (Miss.1999). See also Adoption of C.L.B. v. D.G.B., 812 So.2d 980, 985 (Miss.2002). However, the chancery court's interpretation and application of the law is reviewed under a de novo standard. Tucker v. Prisock, 791 So.2d 190, 192 (Miss.2001); In re Carney, 758 So.2d 1017, 1019 (Miss.2000).
I. WHETHER THE CHANCELLOR RELIED ON THE PROPER LEGAL STANDARD WHEN HE PREDICATED HIS OPINION ON THE DICHOTOMY BETWEEN A SUIT AGAINST SHERIFF HOPKINS IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES.
¶ 12. The County argues the chancellor incorrectly perceived a conflict between the County and Sheriff Hopkins in his official capacity because of the dual *48 legal representation provided by the County. The chancellor held that the Sheriff was named as a party in the federal lawsuit and was being represented by the same attorney who was also representing the Board of Supervisors. However, as the chancellor noted, Sheriff Hopkins was excluded from several conversations and strategy meetings. Therefore, the chancellor held that Sheriff Hopkins "should have been and was entitled to representation to insure his interests were met." Based on this perceived conflict, the chancellor awarded Sheriff Hopkins partial attorney's fees.
¶ 13. The County argues that this question of a potential conflict when the same lawyer defends a governmental employee in his official capacity, but also sues him in his individual capacity, was addressed by the federal district court in response to the Sheriff's motion to disqualify counsel for Madison County. The federal district court held that this argument lacked merit. In his Order and Opinion the federal district judge held:
"A person sued in his official capacity has no stake, as an individual, in the outcome of the litigation." Johnson v. Bd. of County Com'rs for County of Fremont, 85 F.3d 489, 493 (10th Cir.1996).
The suit against Hopkins in his official capacity is thus a suit against Madison County, itself, and Hopkins has no interest in the outcome of the suit against him in his official capacity. Accordingly, there can be no conflict of interest involved when lawyers representing him in his official capacity sue him in his individual capacity.
The County argues that because the federal district court held Sheriff Hopkins, in his official capacity, had no stake in the outcome of the litigation, he was not entitled to be included in conversations and strategy being developed by the County.
¶ 14. The Sheriff does not address this argument in his brief. Although he does contend he had an enormous stake, as an individual, in the federal lawsuit, Sheriff Hopkins does not address his interest in the suit based on his official capacity as sheriff.
¶ 15. The federal district court stated that there was no conflict of interest as a result of the same attorney representing Sheriff Hopkins in his official capacity and suing him in his individual capacity. The chancellor specifically awarded attorney's fees to Sheriff Hopkins based on the perceived conflict between the County and the Sheriff. It is interesting to note here a specific finding by the federal district judge in footnote 3, appearing on pages 27-28 of his Findings of Fact and Conclusions of Law filed on April 9, 1998:
The Court realizes the apparent unfairness in its finding that although the Board willfully failed to pay [the employees] overtime as required under the FLSA, the Board will be able to shift the burden of paying the judgment, including liquidated damages, to the Sheriff, who, as the proceedings in this case have revealed, is not exactly adversary to the [employees]. Meanwhile, in all likelihood, it will be the taxpayers of Madison County who will bear the burden of paying the judgment rendered against the Board. Perhaps a more equitable result would have been for the Court to find the County and Sheriff to be jointly and severally liable. However, such a finding was not permitted in this case because the [employees] chose not to sue the Sheriff in his individual capacity. While it may seem that [the employees] are receiving a windfall as a result of what was, in essence, a political dispute between the Board and the *49 Sheriff, the fact remains that the [employees] performed overtime work for which they were not compensated, and [the employees] are entitled to compensation and liquidated damages under the FLSA.
¶ 16. The very perceptive federal district judge saw the situation as it wasthe Sheriff was aligned with his employees in the federal litigation. If there were any doubt as to the Sheriff's alignment in the federal litigation, it was quickly dispelled when Sheriff Hopkins's privately retained attorney filed an answer on behalf of the Sheriff in his official capacity admitting all the substantive allegations made by his employees, and thus in essence admitting the Madison County defendants out of court. Not surprisingly, the County subsequently filed a motion to strike the Sheriff's answer, which the district court granted, and the County likewise filed its own answer on behalf of the Sheriff in his official capacity thereby denying the employees' allegations. It is also critical to remember that in reversing the district court judgment and rendering judgment in favor of Sheriff Hopkins, the Fifth Circuit did so on the sole basis of the third-party indemnification issue without addressing the remaining issues raised by the Sheriff, including the attorney disqualification issue. The Fifth Circuit's decision thus left intact the district court's findings on the unaddressed issues, including the attorney-conflict issue. Because the chancellor's sole reason for awarding Sheriff Hopkins partial attorney's fees was the perceived conflict due to the same attorney representing the County and the Sheriff in his official capacity, because the chancellor's finding conflicts with a ruling of the federal district court which remained undisturbed on appeal to the Fifth Circuit, and because the chancellor applied an incorrect legal standard, we find that the chancellor committed error in awarding attorneys' fees and expenses to Sheriff Hopkins for his federal court litigation.
II. WHETHER THE CHANCELLOR SHOULD HAVE RELIED UPON MISSISSIPPI CODE SECTIONS 25-1-47 AND 19-3-47 WHICH PERMIT, BUT DO NOT REQUIRE, A COUNTY TO PROVIDE A LEGAL DEFENSE FOR A COUNTY OFFICIAL ACTING IN HIS OFFICIAL CAPACITY.
III. WHETHER, BASED ON MISSISSIPPI CODE SECTIONS 25-1-47 AND 19-3-47, SHERIFF HOPKINS HAD THE RIGHT TO BE REIMBURSED FOR HIS ATTORNEY'S FEES EVEN THOUGH THESE CODE SECTIONS GRANT THE BOARD OF SUPERVISORS DISCRETION IN DECIDING WHETHER TO PROVIDE A DEFENSE FOR COUNTY OFFICIALS.
¶ 17. The County argues the chancellor should have relied on Miss.Code Ann. §§ 25-1-47 and 19-3-47 in determining whether Sheriff Hopkins was entitled to attorney's fees. The County argues both statutes provide that the governmental entity's power to employ counsel for an employee is completely discretionary.
¶ 18. Miss.Code Ann. § 25-1-47 (Rev.1999) states in pertinent part:
(1) Any municipality of the State of Mississippi is hereby authorized and empowered, within the discretion of its governing authorities, to investigate and provide legal counsel for the defense of any claim, demand, or action, whether civil or criminal, made or brought against any state, county, school district, or municipal officer, agent, servant, employee, or appointee as a result of his actions while acting in the capacity of such officer, agent, servant, employee, *50 or appointee; and such municipality is hereby authorized to pay for all costs and expenses incident to such investigation and defense.
(emphasis added). Miss.Code Ann. § 19-3-47(1) (Rev.1995) states in pertinent part:
(b) The board of supervisors shall have the power, in its discretion, to employ counsel in all civil cases in which the county is interested, including eminent domain proceedings, the examination and certification of title to property the county is acquiring and in criminal cases against a county officer for malfeasance or dereliction of duty in office, when by the criminal conduct of the officer the county may be liable to be affected pecuniarily, with the counsel to conduct the proceeding instead of the district attorney, or in conjunction with him, and to pay the counsel out of the county treasury or the road fund that may be involved reasonable compensation, or if counsel so employed is retained on an annual basis as provided in this subsection, reasonable additional compensation for his services.
(emphasis added).
¶ 19. Although Attorney General opinions are not binding, they may certainly be considered by the Court. City of Durant v. Laws Constr. Co., 721 So.2d 598, 604 (Miss.1998). See Miss.Code Ann. § 7-5-25 (Supp.1997). The Attorney General has stated in several opinions that Miss.Code Ann. § 25-1-47 "permits, but does not require, a county to provide legal counsel for the defense of any claim against an officer or employee of a county while acting in his official capacity...." Miss. Att'y Gen. Op. No.XXXX-XXXX, 1999 WL 1075179, *2 (Sept. 10, 1999). See also Miss. Att'y Gen. Op. No. 96-0063, 1996 WL 650029 (Nov. 1, 1996); Miss. Att'y Gen. Op., 1993 WL 669094 (Feb. 3, 1993)(to Robert Shepard); Miss. Att'y Gen. Op., 1991 WL 578171 (Dec. 18, 1991)(to Everett T. Sanders).
¶ 20. Sheriff Hopkins does not disagree that the County is authorized under these statutes to pay attorney's fees; however, the Sheriff disregards the discretionary aspect of the statutes and looks only to Richardson v. Canton Farm Equipment, Inc., 608 So.2d 1240 (Miss.1992). Sheriff Hopkins argues the holding in Richardson states that if a public official has a colorable defense and acts in good faith in bringing that defense, the supervisors must authorize payment for the expense of that defense. The Sheriff contends that because he had a colorable defense and prevailed in that defense, he is entitled to attorney's fees.
¶ 21. In Richardson, this Court addressed the matter of awarding attorneys' fees to the Board of Supervisors paid by the County for the defense of an action brought against the Board.
Without doubt, supervisors are empowered to employ counsel and defend themselves when sued in causes arising out of their official position whether they be sued in their official capacity, individually, or both. See, e.g., Miss.Code Ann. §§ 19-3-47 and 25-1-47 (1972). Public officials are often public targets, and this is a price we are willing to pay, lest the prospect of lawsuits deter solvent citizens from seeking public office. Where they have a colorable defense and present the same in good faith, Supervisors pay expenses of defense out of the public coffers, notwithstanding an adverse judgment. This right coexists on principle with the board members' qualified official immunity from suit regarding acts within their discretionary authority. See Barrett v. Miller, 599 So.2d 559, 567 (Miss.1992); Starnes v. City of Vardaman, 580 So.2d 733, 737-38 (Miss.1991); Grantham v. Mississippi Department of *51 Corrections, 522 So.2d 219, 223-25 (Miss.1988).
Richardson, 608 So.2d at 1253. In Richardson, this Court found the Board of Supervisors did not defend the liability phase of that action in good faith. Id. at 1254. Therefore, this Court ordered the Supervisors to repay one half of all attorneys fees and expenses to Madison County. Id.
¶ 22. The County argues this case is not as clearly on point as Sheriff Hopkins would like this Court to believe. In Richardson, Madison County exercised its discretion in deciding to pay for the Board's legal expenses. However, this Court held the County abused its discretion by providing a defense to the Board when the Board acted in bad faith in its defense. Unlike the case sub judice, there was no question in Richardson as to whether the County had discretion to provide a defense for the Board, but whether the County had abused its discretion in providing that defense.
¶ 23. Miss.Code Ann. §§ 25-1-47 and 19-3-47 without question allow a county to provide legal counsel for the defense of any claim against an employee of that county. However, to assert that Richardson held legal counsel must be provided to all employees with a colorable defense who act in good faith completely disregards the statutorily granted discretion provided to the counties.

CONCLUSION
¶ 24. As noted at the outset, we are ever mindful of the fact that quite often supervisors and sheriffs do not see eye-to-eye when it comes to law enforcement budgetary issues. Also, without question, supervisors should act responsibly in the exercise of sound discretion concerning expenditures as authorized under the applicable statutes. This is imperative to assure that our county sheriffs as well as all our dedicated public officials are not exposed to personal bankruptcy in having to defend claims filed against them in the lawful performance of their official duties. However, the supervisors by law are charged with control of the county's purse strings. Pursuant to Miss.Code Ann. §§ 25-1-47 and 19-3-47, a county has the discretion to provide a defense of any claim against its employees. Because the chancellor erred as a matter of law in ordering the reimbursement of attorney's fees, the judgment of the chancellor is reversed, and judgment is rendered here finally denying Sheriff Hopkins claim for attorney's fees and expenses with prejudice.
¶ 25. REVERSED AND RENDERED.
PITTMAN, C.J., SMITH, P.J., WALLER, EASLEY AND GRAVES, JJ., CONCUR. DIAZ, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., NOT PARTICIPATING.
McRAE, Presiding Justice, Dissenting from the Denial of the Motion for Rehearing:
¶ 26. The majority erroneously finds that no conflict of interest arose when attorneys representing the Madison County Sheriff in his official capacity simultaneously sued him in his individual capacity on behalf of the Madison County Board of Supervisors and that Madison County was not obligated to pay the Sheriff's attorney's fees for hiring defense counsel to represent him. There is a clear ethical dilemma created when an attorney defending a client is allowed to assert third-party *52 claims against that client on behalf of another defendant in the same lawsuit. Furthermore, once the County exercised its "discretion" to provide a defense for the Sheriff in his official capacity, it could not then arbitrarily decide that the Sheriff was only entitled to representation by "its counsel" who was also asserting third-party claims against him individually. For these reasons, I dissent.
¶ 27. First of all, the majority misses the mark when describing the facts giving rise to the conflict of interest. Procedurally, the following events are relevant and determinative to the conflicts analysis:
(1) Fifty-three employees of Madison County's Sheriff's Department instituted an action in the United States District Court for the Southern District of Mississippi against Madison County and the individual members of the County Board of Supervisors under the Fair Labor Standards Act;
(2) The Complaint was later amended to include a claim against Sheriff Jessie Hopkins in his official capacity as Sheriff of Madison County;
(3) Madison County responded to the Complaint and asserted a third-party complaint against Sheriff Hopkins seeking indemnification from the Sheriff individually;
(4) The Sheriff then privately retained counsel;
(5) The County filed an answer on behalf of the Sheriff in his official capacity;
(6) The Sheriff moved to disqualify Madison County's attorney from representing the Sheriff due to a conflict of interest based upon the attorney representing the County and its individual supervisors as well as the Sheriff, in his official capacity, and in further suing the Sheriff individually for indemnification of the County and its Supervisors in the event of an adverse judgment;
(7) The motion for disqualification was denied;
(8) The Sheriff then filed an action in Madison County Chancery Court against Madison County and the individual members of the County Board of Supervisors where he sought attorney's fees for his individual counsel in the federal litigation;
(9) Ultimately, the federal district court dismissed the retaliatory claims asserted by the County against the Sheriff;
(10) On appeal, the Fifth Circuit affirmed the dismissal of the claims asserted by the County against the Sheriff and found that the federal district court should have disqualified Madison County's counsel from representing both the County and the Sheriff in the federal litigation. However, the Fifth Circuit did not address the issue of attorney's fees; and
(11) Finally, in state court, the Madison County Chancellor awarded the Sheriff attorney's fees for a portion of the legal expenses incurred as a result of the federal litigation.
Just to recap. The employees sued the County and the Sheriff. The County defended the Sheriff in his official capacity and asserted a third-party claim against the Sheriff in his individual capacity. Despite the obvious conflict of interest, the County then refused to pay the Sheriff's attorney's fees associated with his retention of private counsel.
¶ 28. In finding that no conflict of interest existed, the majority rests the case *53 upon the fact that the Sheriff in his official capacity was afforded a defense by the County and, therefore, he did not need private representation. Furthermore, the majority finds that even if a conflict may have arisen since "the Sheriff was aligned with his employees in the federal litigation," he was not entitled to private counsel. The majority fails to account for the "individual" claims asserted against the Sheriff by the County and made through the same attorney who was representing the Sheriff in his "official" capacity. Furthermore, the "alignment" argument made by the majority is irrelevant. It does not matter who the Sheriff supported on the issue. Ethically, the only determinative factor is that the counsel retained to represent the Sheriff and the County could not afford the Sheriff an adequate defense when his loyalty was divided since he was also asserting third-party claims against the Sheriff individually.
¶ 29. The majority's holding is totally repugnant and contrary to the mandates of the Mississippi Rules of Professional Conduct. Rule 1.7 provides:
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:
(1) the representation will not adversely affect the relationship with the other client; and
(2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:
(1) the representation will not be adversely affected; and
(2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.
M.R.P.C.1.7 (emphasis added). The Comment to this Rule provides further insight:
As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent. Paragraph (a) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated.... Paragraph (a) applies only when the representation of one client would be directly adverse to the other....
Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations.... When more than one client is involved, the question of conflict must be resolved as to each client....
Paragraph (a) prohibits representation of opposing parties in litigation, including both parties to a divorce action. Se MSB Ethics Opinion No. 80. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or codefendants, is governed by paragraph (b). An impermissible conflict may exist be reason of substantial discrepancy *54 in the parties testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. ...
A lawyer may be paid from a source other than the client, if the client is informed of the fact and consents and the arrangement does not compromise the lawyers duty of loyalty to the client. See Rule 1.8(f).
M.R.P.C. 1.7 cmt. (emphasis added).
¶ 30. Under the circumstances, it is difficult to ascertain whether Rule 1.7(a) or Rule 1.7(b) is the applicable ethical rule on this matter. Rule 1.7(a) appears to apply since the "parties are directly adverse" from the standpoint that the County asserted a third-party claim against the Sheriff for indemnification. Rule 1.7(b) also appears to apply since the facts illustrate a situation where co-defendants have conflicting and distinguishable theories for their defense. In any event, under either Rule 1.7(a) or (b), a conflict of interest arose for which representation was not proper unless the client would not be "adversely affected" and both parties had "informed consent." M.R.P.C. 1.7. Neither of these requirements was met under the present circumstances.
¶ 31. The best scenario provided in the ethics rules which appears to touch upon the present situation is found in Rule 1.13. Rule 1.13 provides in relevant part:
(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.
(d) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.
(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents subject to Rule 1.7.
M.R.P.C. 1.13(a),(d) & (e). The duty defined in this Rule applies to government organizations. M.R.P.C. 1.13 cmt. From this Rule, it is apparent that the drafters anticipated the present situation. To this end, Rule 1.13 defers to Rule 1.7, which was already discussed above, for the ethical obligations of the attorney faced with a conflict of interest.
¶ 32. Also lending support for the proposition that a conflict of interest arose under the present facts are certain ethical opinions which provide interpretation to the policies enumerated in the Rules of Professional Conduct. Ethics Opinion No. 80 addressed the ethical obligations of an attorney providing dual representation to parties in a divorce. Miss. Bar, Ethics Opinion No. 80 (March 25, 1983). In responding to the inquiry, the Mississippi Bar stated the following:
A lawyer should exercise independent professional judgment on behalf of a client.
EC 5-14 and EC 5-15 set forth the aspirational objectives of Canon 5 as the same apply to the instant inquiry.
EC 5-14 provides as follows:
Maintaining the independence of professional judgment required of a lawyer precludes his acceptance of or a continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interest be conflicting, *55 inconsistent, diverse, or otherwise discordant.
EC 5-15 provides in part:
If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests.
DR 5-105(A) and (C) provide:
(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).
(C) In the situations covered by DR 5-105(A) and (B) a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation on the exercise of his independent professional judgment on behalf of each.
... Inquiries by one client as to what would be in his best interest if answered would likely involve advice which would not be in the best interest of the other client.... If the inquiry was not answered, the lawyer would fail in his duty to "adequately represent the interest" of the inquiring client. If answered, the interest of the other client would not be adequately represented. Violation of DR 5-105(A) and (C) would result in either event. Consequently, there is simply no way that the lawyer may avoid the possibility that his loyalty will be divided if he accepts or continues such employment.
Id. (emphasis added). Although relying on past versions of the ethics rules, the analysis and principles enumerated by the Mississippi Bar remain consistent with the revised Rules of Professional Conduct. This Opinion reveals the magnitude of the conflict created by the present "forced" dual representation.
¶ 33. Also instructive is ABA Formal Op. 97-405 (April 19, 1997), which provides, in relevant part:
A lawyer who is engaged to represent a government entity, whether on a fulltime or part-time basis, may not agree simultaneously to represent a private party against her own government client, absent the informed consent of both clients. See Model Rule 1.7(a)
. . . .
The lawyer may not, by agreeing to narrow definition of the government client, seek to defeat the reasonable expectations of her other clients that they will get a conflict free representation from their lawyers....
¶ 34. Under these principles, an attorney's representing a government entity and one of its agents and simultaneously representing the government entity in a third-party claim against that agent presents an obvious conflict of interest. Ethically, the attorney defending the Madison County Board of Supervisors and the Madison County Sheriff may not also represent the Madison County Board of Supervisors in a third-party claim against the Madison County Sheriff. To allow such dual and contrary representation is repugnant to *56 the mandates and principles of the Mississippi Rules of Professional Conduct.
¶ 35. The most obvious illustration of the conflicts which arise in such dual and repugnant representations is found in the area of insurance defense. For example, in Moeller v. American Guarantee & Liability Ins. Co., 707 So.2d 1062 (Miss.1996), we addressed whether an insurer had a conflict of interest with an insured firm and was obligated to let the firm select its own attorney for claims outside of coverage of the insurance policy; whether an attorney hired to defend the firm had a conflict of interest arising from the assertion of a counterclaim against the insured's attorney for defamation; and whether the insured attorney had a duty to notify the insurer of counterclaims against him. American Guarantee & Liability Ins. Co. ("American Guarantee") insured the professional law corporation of Fuselier, Ott, McKee, and Moeller, P.A. ("Firm"). Id. at 1064. Moeller, a member of the Firm, was fired by Fuselier, the president of the Firm. Thereafter, Moeller filed a lawsuit against the Firm and its members individually (collectively "Defendants") alleging wrongful discharge, breach of the employment and stock redemption agreement, fraudulent misrepresentations, and damage to his reputation. Id. The defendants then demanded that American Guarantee acknowledge coverage. Id. at 1066. Fuselier requested that the firm of Magruder, Montgomery, Brocato & Hosemann ("Brocato Firm"), which also represented the Firm during incorporation, represent them in the matter. Initially, American Guarantee denied coverage. The Brocato Firm then wrote a letter to American Guarantee asserting that there was coverage. American Guarantee then agreed to provide a defense under a reservation of rights, but selected its own counsel. American Guarantee retained the firm of Heidelberg, Woodliff, and Franks to undertake the entire defense of the litigation on behalf of the Firm. However, the Brocato Firm continued to represent the Firm at the Firm's own expense. Id. Additionally, American Guarantee never notified Moeller that he was covered under the same policy and did not furnish him a defense. Id. at 1067. The defendants then filed an answer and counterclaim also asserting damage to reputation and good will. Id. at 1064. Ultimately, a judgment was rendered in favor of Moeller. Id. On appeal, this Court affirmed in part and reversed in part the trial court judgment. Id. at 1065.
¶ 36. Following this initial suit, American Guarantee sued the Firm and Moeller seeking a declaratory judgment that it has properly fulfilled its duty to defend, that it had properly reserved its rights under the policy, and that it was not responsible for the full judgment. Id. at 1067. The Firm answered and filed a counterclaim requesting attorney's fees and expenses incurred by them in defending Moeller's action. Moeller also answered and filed a counterclaim seeking attorney's fees and damages for American Guarantee's failure to notify him of his status as an insured and afford him a defense. The trial court found that American Guarantee was obligated to defend the Firm under the policy, that American Guarantee had fulfilled its duty to defend, that American Guarantee was not obligated to pay for the fees of the Brocato Firm, and that American Guarantee had the duty to defend Moeller against the counterclaims asserted by the Firm. Id. at 1068. The Firm then appealed. Id.
¶ 37. On appeal, we held:
When defending under a reservation of rights, however, a special obligation is placed upon the insurance carrier. While this Court has not been called upon to address this issue, other jurisdictions *57 have generally held that in such a situation, not only must the insured be given the opportunity to select his own counsel to defend the claim, the carrier must also pay the legal fees reasonably incurred in the defense. [citations omitted].... As one court reasoned:
In cases where an insurer asserts either policy or coverage defenses, and defends its insured under a reservation of rights, there are various conflicts of interest between the insurer and the insured. ... First, if the insurer knows that it can later assert non-coverage, or if it thinks that the loss which it is defending will not be covered under the policy, it may only go through the motions of defending: `it may offer only a token defense.... [I]t may not be motivated to achieve the lowest possible settlement or in other ways treat the interests of the insured as its own.'... Second, if there are several theories of recovery, at least one of which is not covered under the policy, the insurer might conduct the defense in such a manner as to make the likelihood of a plaintiff's verdict greater under the uninsured theory. ... Third, the insurer might gain access to confidential or privileged information in the process of the defense which it might later use to its advantage in litigation concerning coverage.
CHI of Alaska, Inc. v. Employers Reinsurance Corp., 844 P.2d 1113, 1116 (Alaska 1993).
. . .
The attorney selected and employed by the insurance carrier, of course, has an ethical and professional obligation to represent the company. That attorney is the carrier's attorney. This attorney also has an ethical and professional obligation to represent the insured in the defense of the claim, thus representing two separate and distinct clients. Routinely, and in the vast majority of cases, defense counsel is presented with no conflict of interest between the two. The claim is covered by the policy, and the insurance carrier will pay in full any judgment rendered against the insured, Yet, such counsel must be careful at the time he is asked to represent the insurance carrier and the insured, and if there is any reason indicating a possible conflict of interest at the time of his employment, he should under no circumstances undertake to represent them both. Furthermore, any attorney representing two clients must remain on alert and ever watchful for any possible conflict of interest arising between the two, because the moment that happens, counsel should not attempt to represent them both. [citations omitted].
When an attorney is offered employment by an insurance carrier, he should first ascertain if there is any reason there might be a conflict in representing the carrier and the insured. Is the carrier defending under a reservation of rights? Is the amount sued for in excess of the policy limits? Is it possible that a portion of the claim may be covered, and another not, or that the policy covers one theory of liability, but not another one? If so, he should undertake to represent only the interest of the insurance carrier for the part covered, and the insurance carrier should afford the insured ample opportunity to select his own independent counsel to look after his interest. [citations omitted].
Moreover, if during the representation of both parties a conflict of interest arises, defense counsel should withdraw from representation of either if there is any possibility that representing one and not the other may be injurious to the *58 client the attorney ceases to represent. [citation omitted].
Turning to this case, it is readily apparent that in Moeller's circuit court complaint against Fuselier, Ott and McKee, only the defamation claim was covered by the policy; other claims were not. American Guarantee owed Fuselier, Ott and McKee a legal defense to this particular claim, and to pay all sums of money the firm became legally obligated to pay for this particular claim. This is the sum total of the contractual obligation American Guarantee owed to the law firm. While it may have caused some inconvenience, it would have presented no conflict of interest for American Guarantee to employ an attorney solely to defend this claim. American Guarantee would have defended, and in the event of judgment, paid this claim. Fuselier, Ott and McKee were perfectly free to employ their own counsel, as indeed they had, to defend the other claims made against the firm.
Rather than acknowledge that coverage was restricted to this one claim and furnish counsel for its defense, however, American Guarantee chose to defend it with a reservation of rights to later deny coverage. This presented a clear conflict of interest between itself and Fuselier, Ott and McKee. ...
The law firm chosen by American Guarantee to defend this complaint was under a professional duty to recognize two conflicts of interest between American Guarantee and Fuselier, Ott and McKee, namely: (1) defending under a reservation of rights, and (2) attempting to represent both parties in defending all claims, only one of which was covered by the policy.
Because Fuselier, Ott and McKee was being defended under the defamation claim with a reservation of rights, American Guarantee was obligated to let them select their own attorney at American Guarantee's cost to represent them. ...
A law firm which cannot be one hundred percent faithful to the interests of its clients offers no defense at all. "There is no higher ethical duty in the legal profession than complete absolute fidelity to the interest of the client." State Farm Mut. Auto. Ins. Co. v. Commercial Union Ins. Co., 394 So.2d 890, 894 (Miss.1981). The law firm chosen by American Guarantee should have recognized it could not be faithful to the interests both the carrier and the law firm in attempting the defense of the defamation claim. Neither could it faithfully represent the interests of both the insurance carrier and the law firm when it attempted to represent all claims, only one of which was covered by the insurance policy and all the others were not....
707 So.2d at 1068-71 (emphasis added).
¶ 38. The same is true here. Ethically, just as an attorney representing an insurer defending under a reservation of rights cannot remain unbiased and "one hundred percent" loyal in defending the insured, an attorney representing a County and a Sheriff cannot remain unbiased and loyal when the attorney is at the same time representing the County in a third-party complaint against the Sheriff.
¶ 39. Also of interest is the majority's assertions that since the County by statute has the "discretion" to provide a defense, it is not obligated to pay the attorney's fees of the Sheriff in defending this action. It is true that Miss.Code Ann. § 25-1-47 (Rev.2003), provides the County Board of Supervisors with "discretion" to *59 employ counsel for proceedings instituted against County employees. However, the majority misses the fact that the County Board of Supervisors did exercise that "discretion." The County Board did retain counsel and attempt to defend the claims asserted against the Sheriff. This very action created the conflicts at issue here. By exercising its "discretion" and providing counsel, the County Board assumed the responsibility of providing an ethical and adequate defense for the Sheriff. It could not arbitrarily decide that it only had to provide the counsel of "its choice," despite the obvious conflicts of interest which this created. If this is declared the law, then certainly more areas of government liability will be implicated. For instance, consider the Mississippi Tort Claims Act. May a governmental entity now defend its employees against such a claim, but at the same time counterclaim against the employee for indemnification? Or may the governmental entity defend its employee and argue in court that the employee was not in his "course and scope of employment," therefore limiting its own liability while placing all the blame on the employee who is not provided his own independent counsel and voice in the matter?
¶ 40. Lastly, if we were to accept the majority's argument that the claims against the Sheriff were that of the County, then essentially we would be saying that when the County filed a third-party claim against the Sheriff, it was suing itselfwhich as we all know is not allowed by law. The facts presented show without a doubt that the County sued the Sheriff personally for indemnification in an effort to shield itself from liability. By holding that the County may still select the Sheriff's counsel and provide a "deficient" defense in an effort to achieve its goals of shifting responsibility, the majority is throwing the Rules of Professional Conduct out the door.
¶ 41. For the above-stated reasons, I dissent.
NOTES
[1] The dismissal of the retaliation claims was not an issue on the subsequent appeal to the Fifth Circuit.