## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 98-CA-00027-SCT

*IN THE MATTER OF THE ESTATE OF NANCY A. JOHNSON, DECEASED: BOB RICH AS CO-CONSERVATOR OF PAULINE RICH*

*v.*

*LLOYD L. MOORE, RALPH SEXTON, AND DANNY LINDSEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/27/1997 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | TISHOMINGO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DUNCAN L. LOTT |
| ATTORNEY FOR APPELLEES: | LLOYD L. MOORE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 3/25/1999 |
| MOTION FOR REHEARING FILED: | 4/7/99 |
| MANDATE ISSUED: | 5/20/99 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This is an appeal from the "Opinion and Judgment" rendered by Honorable John C. Ross, Jr., Chancellor of the Chancery Court of Tishomingo County, Mississippi, involving the Estate of Nancy A. Johnson, deceased. The gross estate of Ms. Johnson was determined by the court to be $3,101,804.34, and the beneficiaries of her estate were five heirs at law.

¶2. On September 18, 1997, Ralph Sexton (hereinafter "Sexton"), the administrator of Ms. Johnson's estate, through his attorney, Lloyd Moore (hereinafter "Moore"), filed an Accounting and Petition to Confirm Sale of Property, Personalty, and Coins and for Partial Disbursement of Assets. Contained in this petition was a request for administrator's fee, attorney's fee and accountant's fee.

¶3. Bob Rich, co-conservator of Pauline Rich, one of the heirs at law, objected to these fees. On the 17th of October, 1997, this case was set for a hearing. Four of the five heirs at law either executed "Joinder and Waiver of Process and Entry of Appearance" forms or chose to attend the hearing.

¶4. After receiving testimony and evidence at the hearing, the chancellor took the motion under advisement and entered his two-page Opinion and Judgment of the Court on October 27, 1997, denying the objections

of Rich and allowing Sexton an administrator's fee of $108,563.15, Moore an attorney's fee of $108,563.15 and accounting fees to Danny Lindsey of $30,000. Aggrieved by the trial court's decision, Rich perfected this appeal raising the following issue:

### I. WHETHER THE CHANCELLOR ERRED IN HIS AWARD OF ADMINISTRATOR'S, ATTORNEY'S AND ACCOUNTANT'S FEES?

Rich requests that this Court set aside the chancellor's award and assess a reasonable administrator's, attorney's and accountant's fees based upon the proof presented to the court below.

### STATEMENT OF THE FACTS

¶5. Nancy A. Johnson died intestate on October 18, 1996, and Letters of Administration were issued to Sexton as Administrator on November 13, 1996. A Notice to Creditors was filed on November 13, 1996, and the usual claims were made against the estate from its inception in November of 1996 until this petition was heard in October of 1997. Moore was employed as attorney for the estate by Sexton and handled those duties from the inception. Danny Lindsey, C.P.A., was employed as the accountant by Sexton. Lindsey had prepared Ms. Johnson's income tax returns in the past and had knowledge of her finances. Also, Lindsey had prepared the income tax returns of Ms. Johnson's father and mother and their estate tax returns.

¶6. Sexton, Moore, and Lindsey were charged with the responsibilities and duties of administering a $3,101,804.34 gross estate with the goal of preserving as much of the estate's assets as possible for distribution to the five heirs at law.

¶7. Approximately twelve (12) months from the time Temporary Letters of Administration were issued, Sexton, by and through Moore, filed an Accounting and Petition to Confirm Sale of Realty, Personalty, and Coins and for a Partial Disbursements of Assets.

¶8. The petition listed the five (5) heirs at law, and copies were included of letters sent to each stating that the hearing would be held on the 3rd of October, 1997; that Notice to Creditors had been published according to law; that all known creditors were given notice to probate their claims; that the gross estate was subject to federal and state estate taxes; no final closing letters had been received from the IRS or the Mississippi Tax Commission; that the personal property of the estate was sold at public auction for a net amount of $68,966.14; the residence was sold for $61,500; that the coin collection was sold for $535.38; and of which Sexton asked the chancery court to ratify and confirm as fair and equitable.

¶9. The petition further requested that the court allow a distribution from the estate of 6,000 shares of Abbott Laboratories common stock and $20,000 to each of the five heirs at law. Attached to the petition was a detailed accounting of the receipts and disbursements that accounted for all the assets received into the estate and for all expenditures made on behalf of the estate. Also contained in the petition was a request for administrator's, attorney's and accountant's fees totaling $247,126.30.

¶10. Executing Joinder and Waiver of Process and Entry of Appearance forms were Abe Johnson, Linda Searcy as conservator for the person of Pauline Rich and co-conservator for the Estate of Pauline Rich, Wesley Neil Johnson, and John W. Sartain. Thus, they entered their appearance, waived any and all process and joined in the petition which requested that the accounting and sale of assets be confirmed and there be a partial disbursement of estate assets.

¶11. On October 1, 1997, only two days before the hearing, Rich obtained a continuance stating that he and his attorney would be out of state and unable to attend. The hearing was reset for October 17, 1997, with each heir at law being notified of the new date.

¶12. At the hearing, stipulated facts, testimony, evidence and exhibits were presented to the chancellor. Sexton oversaw the detailed inventory of the personal property located at Ms. Johnson's residence. He also collected the mail, separated the bills to deliver to the attorney, and did all of the banking. His position as administrator required Sexton to leave work during the day to handle estate affairs which included: meeting with the attorney and CPA; settling insurance claims, inventorying the lock box ; assisting in the funeral arrangements for Ms. Johnson and; paying numerous bills of the estate. Furthermore, Sexton took part in the appraisal and sale of a coin collection, sale of the residence and the auction of the personal property of Ms. Johnson. Sexton was involved with the tax issues of the estate and their payment and the selling of stock belonging to Ms. Johnson in order to bring liquid assets into the estate and to pay taxes. When asked about compensation as administrator, Sexton testified that he considered a fee of three and one-half percent of the gross estate as being a fair fee.

¶13. To support his testimony, Sexton submitted a detailed time sheet reflecting at least eighty-eight hours served as the administrator of the estate. The time sheet was admitted into evidence, but does not reflect the time served as administrator since October, 1997.

¶14. Charlene Fancher, Office Manager for Attorney Moore, had been involved in the administration of Ms. Johnson's estate since the beginning. She prepared letters to creditors, assisted in filing and paying all duly probated claims, executed releases against the estate, made deposits for monies received for the estate, reconciled monthly bank statements, corresponded with the heirs, helped prepare the coin inventory and savings bond inventory, and showed Ms. Johnson's home to prospective buyers. Fancher and Moore's office were actively involved in transferring Ms. Johnson's stock to the estate and heirs at law, with the actual transfers being made through licensed and qualified brokers. Fancher made no personal claim against the estate, but submitted a time sheet to show the number of hours she expended on estate matters as an employee of Moore. These time sheets were admitted into evidence showing approximately 45 hours expended by her on estate matters.

¶15. Lindsey handled the estate tax form and sought a fee of $30,000 for his work. Lindsey estimated that he had worked approximately 105 hours on preparing the estate tax returns. Lindsey stated that he prepared the final 1996 personal income tax returns, the estate tax returns, the 1996 fiduciary tax returns, and was gathering information to include on the 1997 fiduciary tax returns. Lindsey further testified that he would be filing the 1997 fiduciary tax returns and that if the estate was not completely closed by December 31, 1998, he would be filing fiduciary tax returns for 1998.

¶16. Lindsey noted that it would probably be tax advantageous to allow estate income to pass directly to individual heirs at law, with a possible savings to the estate of $50,000. Furthermore, Lindsey testified that he saved the estate approximately $223,000 in taxes. The tax savings were due to a credit that Ms. Johnson's estate was allowed to claim for the estate taxes that had been paid on her father's previous return. The testimony of Lindsey reflected time spent as of the hearing date, but does not reflect the time spent as the accountant since October of 1997.

¶17. Harold S. Jackson, an attorney who had practiced in Tishomingo County since August of 1971 and

had handled several estates, heard the testimony and proof presented to the chancery court, looked over the file, and believed the court file reflected a lot of work and time had been invested in the administration of the estate. Jackson testified that a standard and customary fee for an attorney in Tishomingo County was $85 to $135 per hour, and he further agreed a fee for handling an estate should be based upon the complexity of the matter handled, the attorney's experience, time expended, difficulty of work, skill required, responsibility, amount of estate, and promptness of service. Jackson further noted that it was his understanding that no statutory minimum or maximum fee existed and that the amount awarded as fees was solely in the discretion of the court. Jackson stated that given the amount of complexity, the work and the duties performed as evidenced by the entries in the court file, he believed a fee of 3 ½ % for the administrator and 3 ½ % for the attorney was reasonable. A time sheet prepared by Attorney Moore as to the hours expended by him in handling the estate was admitted into evidence during Jackson's testimony; it totaled approximately 85 hours.

¶18. Rich and Linda Searcy are the children of Pauline Rich, who is one of the five heirs at law of Ms. Johnson's estate. They are co-conservators for their mother's estate. Additionally, Ms. Searcy is conservator of the ward, Pauline Rich, and is responsible for her day-to-day care and maintenance. Rich testified that he was in court to protect his mother's interest in the estate of Ms. Johnson. He stated that he had a lawyer who would see to it that everything was done concerning his mother's estate.

¶19. Joyce Rich, Rich's wife, was called and questioned about the work performed by her husband in the conservatorship of Pauline Rich. She stated that Linda Searcy's attorney was supposed to do everything and thus, her husband did not have to do anything because the lawyer was paid to do it.

¶20. At the conclusion of the hearing the matter was taken under advisement with the court stating that it needed the opportunity to review the court file and various exhibits entered at the hearing.

¶21. An Opinion and Judgment of the Court was rendered on October 27, 1997, granting to Sexton and Moore fees of $108,563.15 and fees to the accountant, Lindsey, of $30,000. The Opinion and Judgment stated in part that:

> Based upon the proof presented to the Court, the Court finds that the objection to the request filed by Bob Rich as co-conservator of Pauline Rich is without merit and the same is denied. It is significant to note that Linda Searcy as the other co-conservator of the estate (and also the conservator of the person) of Pauline Rich, does not object to the petition of the administrator. The proof established conclusively that based upon the complexity of the estate, the numerous transactions involved with the sale of personalty and realty, that the fees are reasonable and are hereby approved.

¶22. Rich filed a Motion for Stay of Judgment and to Set Supersedeas Bond Pending Appeal on October 29, 1997, and the chancery court entered an order requiring Rich to post a supersedeas bond in the amount of $61,781.89, which represented one hundred and twenty-five percent of $49,425.26, the amount in controversy. On December 2, 1997, the chancery court issued a supplemental order reducing the amount of the supersedeas bond to $12,356.63. On December 19, 1997, the chancery court ordered that the conservatorship of Pauline Rich was not required to post a Supersedeas Bond, but that Bob Rich , as a co-conservator of his mother may individually perfect an appeal and post a supersedeas bond as it pertains to this estate. On December 23, 1997, Rich filed his Notice of Appeal and his Appeal Bond to Supreme Court of Mississippi with Supersedeas.

## DISCUSSION OF THE ISSUES

### I. WHETHER THE CHANCELLOR ERRED IN HIS AWARD OF ADMINISTRATOR'S, ATTORNEY'S AND ACCOUNTANT'S FEES?

¶23. Rich asserts that the chancellor erred in awarding $ 108,563.15 to both Attorney Moore and Administrator Sexton, and $30,000 to Accountant Lindsey. Rich contends that Sexton and Moore sought fees based upon a percentage of the gross estate and sought to justify their fees based upon the value of the estate rather than the complexity of and hours expended in handling the estate. He further states that the chancellor abused his discretion in that he ignored the other facts which weighed heavily against the amount of fees given to Sexton and Moore and instead approved their request based only upon a percentage of the gross estate - 3 ½ % each. This Court agrees. While fair compensation should be given for the work done in administering an estate and protecting the interests of the heirs, attorney and administrator fees amounting to $1,200 an hour and payment of an accountant at a rate of $300 an hour is clearly excessive in relation to the effort expended.

¶24. This Court will reverse a chancellor only when he is manifestly wrong. *Hans v. Hans*, 482 So. 2d 1117, 1119 (Miss.1986); *Duane v. Saltaformaggio*, 455 So. 2d 753, 757 (Miss.1984). A chancellor's findings will not be disturbed unless he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. *Tinnin v. First United Bank of Miss.*, 570 So. 2d 1193, 1194 (Miss.1990); *Bell v. Parker*, 563 So. 2d 594, 596-97 (Miss.1990). Where there is substantial evidence to support his findings, this Court is without the authority to disturb his conclusions, although it might have found otherwise as an original matter. *In re Estate of Harris*, 539 So. 2d 1040, 1043 (Miss.1989). Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee. *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss.1990). The chancellor's decision must be upheld unless it is found to be contrary to the weight of the evidence or if it is manifestly wrong. *O.J. Stanton & Co. v. Mississippi State Highway Comm'n*, 370 So.2d 909, 911 (Miss.1979). Therefore, in order to be successful on appeal, Rich is saddled with the burden of establishing affirmatively and clearly that the chancellor's award of fees to the administrator, attorney and accountant is manifestly wrong and is not supported by substantial evidence. *Watts v. Lawrence*, 703 So. 2d 236, 237 (Miss. 1997).

¶25. The chancellor has the duty to review the reasonableness of fees charged to the estate. *Moreland v. Riley*, 716 So. 2d 1057, 1062 (Miss. 1998).

> Mississippi case law has long held, "The statute vests in the sound discretion of the court in which the administration is pending the duty to fix the fees of the attorney if it is of the opinion that the service was necessary and had been rendered in good faith."

*Scott v. Hollingsworth*, 487 So. 2d 811, 814 (Miss. 1986) (*quoting **Brown v. Franklin***, 166 Miss. 899, 903, 145 So. 752, 753 (1933)). Additionally, Uniform Chancery Rule 6.12, provides in relevant part:

> In such cases, the amount allowed as attorney's fees will be fixed by the Chancellor at such sum as will be reasonable compensation for the service rendered and expense incurred without being bound by any contract made with any unauthorized persons. If the parties make an agreement for a contingent fee the contact or agreement of the fiduciary with the attorney must be approved by the

Chancellor. Fees on structured settlements shall be based on the "present cash value" of the claim.

¶26. Furthermore, Miss. Code Ann. § 91-7-299 (1994), which governs the allowance given to an administrator, reads in part:

The court shall allow to an executor or administrator, as compensation for his trouble, either in partial or final settlements, such sum as the court deems proper considering the value and worth of the estate and considering the extent or degree of difficulty of the duties discharged by the executor or administrator; in addition to which the court may allow him his necessary expenses, including a reasonable attorney's fee, to be assessed out of the estate, in an amount determined by the court.

¶27. In determining what constitutes a reasonable fee, we have said a chancellor should consider:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

*Moreland*, 716 So. 2d at 1062 (*quoting **Dynasteel Corp. v. Aztec Industries Inc.***, 611 So. 2d 977, 986-87 (Miss. 1992).

¶28. In the present case, Nancy Johnson left an estate of $3.1 million. Though substantial in size, it was not a complicated estate, with the bulk of the assets comprised of Abbot Laboratories common stock and an IRA, the division or liquidation of which was handled easily by a reputable brokerage firm. The work performed by Sexton and Moore resulted in a public auction and sale of personalty which generated $68,966.14, and the private sale of the home which netted $61,500. The record also indicates that Ms. Johnson lived modestly and rarely bought on credit, the very few claims against the estate were small, uncomplicated matters largely dealing with her final illness. The testimony by Sexton and the time sheet submitted by Moore clearly reflect that there were no complex issues involved in this case, and there was no litigation required concerning estate business or estate matters. Furthermore, the accountant had handled Ms. Johnson's financial affairs in the past, as well as those of her parents, from who she inherited the bulk of her assets. Thus, the executor, attorney and accountant had ready access to information which made their jobs considerably easier.

¶29. A local attorney who had handled several large estates testified that attorneys in Tishomingo County generally earn between $85 and $135 an hour. Attorney Moore entered a time sheet showing that he

expended 85 hours working on the estate. That amounts to over $1,200 an hour in compensation. Even factoring in the 45 hours his office manager expended on matters related to the estate, Moore earned more than $800 an hour. The administrator, a maintenance man at a local factory, also earned a little over $1,200 an hour for picking up the mail and other matters associated with his cousin's estate (he stated that he put in approximately 88 hours). The accountant, Lindsey, who estimated that he spent 105 hours preparing the estate tax returns, earned a little under $300 an hour. After reviewing the eight enumerated factors that have a bearing on the reasonableness of an attorney fee, this Court finds that the attorney's and administrator's fee award, along with the accountant's fee award, was an abuse of discretion and was unreasonable in light of the time consumed and the simplicity of the settling of the estate.

¶30. We observe that some of the complications that arise in the awarding of attorney's fees can be avoided or minimized by attorneys merely stating their basic rate in a written contract approved by the administrator or chancellor, with notice provided to the heirs. This would promptly establish an understanding as to the fee. Indeed, Rule 1.5(b) of the Mississippi Rules of Professional Conduct provides that when an attorney "has not regularly represented the client, the basis or rate of the fee **shall** be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation." (emphasis added). It is sufficient to state that the basic rate is an hourly charge or a fixed amount or an estimated amount or a percentage of the estate, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. This would dispel the question concerning the use of a percentage fee as the heirs approval of this type of fee would be required. A written statement concerning the fee will significantly reduce the possibility of a misunderstanding which would result in litigation.

## CONCLUSION

¶31. A consideration of the totality of circumstances in this case indicates that the fees set by the Court for the administrator, attorney and accountant are simply too high, and that there is a paucity of evidence supporting the same.

¶32. In the absence of an express contract by all parties, or other evidence in support thereof, $1200.00 per hour for the attorney (or $800.00 for that matter) and $1200.00 per hour for the administrator are excessive. The considerably smaller accountant's fee may be more nearly correct, but should also be reevaluated in accordance with this opinion.

¶33. The judgment of the Tishomingo County Chancery Court is reversed and this case is remanded for further proceedings consistent with this opinion.

¶34. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.**