986 So.2d 1072 (2008)
In the Matter of the ESTATE of Hubert Earl CARSON, Deceased, and Lela Irma Carson, Deceased.
Carson Family Trust and Edwin Dale Carson, Appellants,
v.
Hubert Douglas Carson, Executor, Appellee.
No. 2006-CA-02006-COA.
Court of Appeals of Mississippi.
July 22, 2008.
*1073 Martha del Guillotte Carson, attorney for appellants.
Jack Parsons, Tadd Parsons, Wiggins, attorneys for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
CHANDLER, J., For the Court.
¶ 1. On January 28, 2005, the Chancery Court of Harrison County entered a judgment approving the final accounting of the estates of Hubert Earl Carson and Lela Irma Carson by their son Hubert Douglas Carson, the executor of their wills. The judgment also approved other distributions from the estates, including attorney's fees. Aggrieved, the other parties in interest, Carson Family Trust and Edwin Dale Carson, now appeal. They raise the following issues, which we quote verbatim:
I. Whether the trial court erred by granting comprehensive protective orders to the co-defendants, Hubert Douglas Carson and Mary Frances Carson, or by declining jurisdiction of the inter vivos matters arising from a confidential relationship between the co-defendants and the decedents, or by providing a forum for the protection of the estate interests for the majority of the beneficiaries.
II. Whether the trial court erred by appointing the executor of the will without a bond, sans hearing on objections, when the executor was personally profiting from rental and sale of estate assets without the consent of other heirs.
III. Whether the trial court erred in distributing the entire liquid assets of the estate as attorney's fees for the executor, and closing the estate with the personalty of the decedents in the hands of the executor with probate claims for attorney's fees and outstanding expenses.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Hubert Earl Carson (Hubert) died on July 1, 2002. His wife, Lela Irma Carson, followed soon after, dying on September 15, 2002. Each decedent was living in a separate personal care center when he or she died. The decedents were survived by three sons: Hubert Douglas Carson (Douglas), Edwin Dale Carson (Edwin), and Gary Roger Carson (Gary).
¶ 4. Upon their deaths, the decedents' wills devised all of their assets to their three sons equally. The wills nominated the couple's eldest son, Douglas, as executor. Some years prior to their deaths, the decedents granted Douglas's wife, Mary Frances Carson (Mary Frances), a general power of attorney. The decedents also *1074 placed their checking account in their name and in that of Mary Frances as a survivor. At the time of their deaths, the funds in that account passed immediately to its joint owner, Mary Frances. Nevertheless, she paid into the estate the remaining funds from the account that were not spent for the benefit of the decedents.
¶ 5. While Gary was entitled to one-third of his parents' estates under the will, he declined his share in favor of the Carson Family Trust, which his wife, Martha Carson, oversaw as trustee. On November 15, 2002, Martha, as trustee, filed a petition with the chancery court to administer the estates of the Hubert and Lela. She claimed to have been unable to discover any wills executed by the decedents, and she asked the chancellor to appoint her as administratrix. The chancellor issued letters of administration appointing Martha as administratrix, and she proceeded to notice creditors and determine the heirs at law.
¶ 6. Thereafter, Douglas filed a motion requesting that the chancellor remove Martha as administratrix, appoint Douglas as executor, and probate the wills of Hubert and Lela. After Douglas produced the wills, the chancellor admitted them for probate in common form. As requested in the wills, the chancellor appointed Douglas as executor and did not require him to post any bond. No one contested the validity of the wills or any of the provisions contained therein.
¶ 7. Douglas claimed to have kept the wills in a safe deposit box since his parents gave them to him in 1994. He also said his parents had requested that he not probate the wills for six months following their deaths. However, he decided to proceed with probate after Martha was appointed to administer the decedents' intestate estates, which were not actually intestate. Douglas claimed that he initially retained Jeff White as an attorney to probate the will, but White failed to do so. Douglas said he then retained Jack Parsons, who proceeded to probate the will and who represented Douglas as executor throughout the proceedings that followed. In June 2003, Douglas filed an Inventory and a First Annual and Final Account.
¶ 8. Taking issue with Douglas's accounting, Martha filed a motion for a perfect accounting. The chancellor refused to grant the motion and required her to file a written objection specifying her objections to the accounting. Additionally, Martha filed the following motions: (1) to set aside all inter vivos transfers from the decedents to Douglas and Mary Frances, (2) to remove Douglas as executor and to require him to indemnify the estate for his acts as executor, (3) to appoint an administrator de bonis non, (4) to compel discovery, and (5) to show cause for contempt.
¶ 9. Initially, Martha contested Douglas's appointment as executor of the will. She alleged that Douglas claimed that he "deserved the lion's share" of the estate, which was contrary to the express provisions of the will providing for equal distribution. Martha also argued it was improper for Douglas to have rented his parents' home to a tenant for approximately $495 per month, an amount she said Douglas converted to a personal benefit. Douglas rented the house before his parents' deaths, and he continued to do so for a few months following their deaths. Nevertheless, the inventory he filed accounted for income from renting the home since January 2001. Regarding the decedents' home, Martha also took issue with Douglas's failure to obtain insurance to cover any liability for which Hubert and Lela's sons would have been responsible.
¶ 10. Martha further alleged that Douglas was in breach of the fiduciary duty that he owed to the estate. It was her contention *1075 that Douglas concealed the wills of Hubert and Lela. Martha also alleged that Douglas failed to claim the life insurance policy proceeds on the life of Hubert on behalf of his incompetent mother, Lela.
¶ 11. Lastly, Martha argued that the addition of Mary Frances as a joint account holder to the decedents' checking account was a void inter vivos transfer. It was Martha's argument that Mary Frances and Douglas were in a confidential relationship with Hubert and Lela because they were solely responsible for arranging for the physical care of the decedents. Martha claimed that such a relationship, combined with Hubert's medical difficulties and Lela's incompetence, should have rendered any transactions void.
¶ 12. In response, Douglas and Mary Frances filed a motion for a protective order, claiming that all assets were accounted for and that the discovery sought by Martha related to matters occurring before the deaths of Hubert and Lela. Douglas argued that because the matters occurred years before the decedents' deaths, the matters were unrelated to the estate proceedings, and discovery of such matters was not proper in the ongoing matter. The chancellor granted the motion for a protective order, thereby preventing Carson from requesting any discovery from Douglas or Mary Frances. In addition, the chancellor denied the motion to set aside all inter vivos transfers, finding that Martha should file a separate claim to resolve the issue.
¶ 13. The parties agreed to divide the real property of the decedents into thirds, with Douglas to receive the portion of the property on which the decedents' home was located. In exchange, the amount of land Douglas received was one-half acre less than that received by Edwin or the Carson Family Trust.
¶ 14. In the final judgment, the chancellor approved the final accounting by Douglas and denied Martha's motions except the motion to set a deposition for Mary Frances. For her services as administratrix, the chancellor awarded Martha the following sums: $750, $100 for administrator's bond, $87 for filing fees, $259.44 for publication costs, and $150 for service of process. The chancellor awarded no additional attorney's fees to White because he represented Mary Frances, as well as the executor, but the chancellor awarded him $87.00 for his out-of-pocket filing fee. Parsons, as attorney for the executor, received $10,000 in attorney's fees. Douglas was also to turn over a trunk that belonged to Lela, and the parties were to divide the remainder of the decedents' personal property listed in the inventory in an agreed upon manner. Lastly, the chancellor ordered Douglas to distribute to Edwin and the Trust their portions of any rental proceeds that Douglas collected from renting the decedents' home after their deaths.
¶ 15. Martha subsequently filed a motion pursuant to Rule 52 of the Mississippi Rules of Civil Procedure requesting that the chancellor amend his findings of fact in the judgment. The chancellor denied Martha's motion, after which she timely filed this appeal.

STANDARD OF REVIEW
¶ 16. This Court may not disturb a chancellor's findings if they are supported by substantial evidence. Rich v. Moore (in re Estate of Johnson), 735 So.2d 231, 236(¶ 24) (Miss.1999) (citing In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989)). We will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. (citing Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990)).
*1076 ¶ 17. However, we will conduct a de novo review for questions of law. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002).

LAW AND ANALYSIS

I. Whether the chancellor erred by refusing to allow Carson to request discovery from Douglas and by refusing to consider the matter of the inter vivos transfers to Douglas and Mary Frances.
¶ 18. The first issue Martha presents relates to events that occurred before the deaths of Hubert and Lela. Martha argues that the chancellor "improvidently denied jurisdiction, as a matter of law, to consider the confidential nature of [inter vivos] transfers by the decedents to the executor...." She takes issue with the chancellor's dismissal of her motion to set aside all inter vivos transfers from the decedents to Douglas. Martha contends that the transfers were a result of a confidential relationship, which was formed by Douglas's position as his parents' caretaker and the fact that the decedents had granted Mary Frances a power of attorney.
¶ 19. In his ruling on the motion to set aside all inter vivos transfers, the chancellor did not outright refuse to hear the issue. He did, however, refuse to hear it as a motion in the ongoing estate proceedings. The chancellor found that it was not proper to litigate in the estate proceedings potential transactions that took place prior to the decedents' deaths. At a hearing on the motion, the chancellor specifically said that Martha had the right to file a suit to recover anything that Douglas acquired through an improper relationship with the decedents; however, he found "that such issues must be filed as a separate action by Martha G. Carson[] and Edwin Dale Carson, if they desire to do so." In addition, the chancellor was of the opinion that the estate would potentially have to remain open until the conclusion of such a suit. To facilitate matters, he offered to hear the suit upon the parties' agreement, so they would not have to wait to resolve the issue.
¶ 20. Notwithstanding the chancellor's direction that the proper method to challenge the inter vivos transfers was a separate action, Martha did not file a separate suit. Instead, she continued to request a ruling on her motion to set aside all inter vivos transfers.
¶ 21. We find no error with the chancellor's decision that Martha should file a separate claim to settle the inter vivos matters. The issues were unrelated to Douglas's actions as executor of the estate. Martha did not challenge the will or any of the provisions of the will. She did not allege that the will itself or any of its provisions were of the result of a confidential relationship, only that the transfers that preceded the decedents' deaths were the result of a confidential relationship. Furthermore, the chancellor's ruling did not deny Martha an opportunity to argue her claims against Douglas. The record makes it clear that the chancellor was willing to hear those claims and to postpone closing the estate until the matter was resolved.
¶ 22. Rule 3(a) of the Mississippi Rules of Civil Procedure provides that "[a] civil action is commenced by filing a complaint with the court." The proper procedure for challenging the transfers that took place during the decedents' lives was to file a claim alleging that the transfers were the result of a confidential relationship. Martha filed no such claim, and we find no error with the chancellor's refusal to grant her motion to set aside all inter vivos transfers.
*1077 ¶ 23. Martha cites Illinois Central Railroad Company v. Garrison, 81 Miss. 257, 265, 32 So. 996, 997 (1902) for the proposition that the chancery court may exercise jurisdiction over multiple suits to prevent a multiplicity of suits. More recently, in Dees v. Estate of Moore, 562 So.2d 109, 112 (Miss.1990), the supreme court found that it was improper for the chancery court to dismiss via summary judgment a suit to determine heirship when the complainant properly filed a will contest. In Dees, the supreme court found that it was acceptable for a party to combine a suit to determine heirship with a suit to contest a will. Id. What distinguishes Dees and Garrison from the instant case is that the parties in those cases properly filed claims. Here, Martha attempted to set aside all inter vivos transfers that she alleged were a result of a confidential relationship through a motion she filed with the court, not through any claim or counterclaim that she filed. The chancellor gave Martha the opportunity to properly bring her claim before the chancery court, but she failed to do so. Therefore, we find no error with the chancellor's refusal to hear her claims, and we find no merit to this issue.

II. Whether the chancellor should have required the executor to pay a bond.
¶ 24. Martha next alleges that Douglas retained his parents' assets that should have been placed in the estate. In light of her allegations, Martha argues that the chancellor erred in appointing Douglas to serve as executor without a hearing to determine his fitness for the position. She also argues the chancellor should have required Douglas to post a bond in order to serve as executor.
¶ 25. Mississippi Code Annotated section 91-7-41 (Rev.2004) requires that the executor of a will give bond equal to the full value of the estate. However, Mississippi Code Annotated section 91-7-45 (Rev.2004) provides for an exception if the will directs the executor not to give bond, stating in part:
If the testator, by will, direct that his executor shall not be required to give bond, then none shall be required unless the court or the clerk, at the time of granting the letters or afterwards, shall have reason to require bond, in which event it shall be the duty of the court or clerk to require bond with sufficient sureties.
See also Brown v. Franklin, 157 Miss. 38, 50-52, 127 So. 561, 564-65 (1930). Furthermore, the chancellor enjoys great discretion in the decision of whether to appoint or remove an executor. Costello v. Hall, 506 So.2d 293, 299-300 (Miss.1987) (citing In re Estate of Flowers, 493 So.2d 950, 951 (Miss.1986)); see also Stribling v. Washington, 204 Miss. 529, 536-37, 37 So.2d 759, 760-61 (1948).
¶ 26. Martha cites no cases in support of her position other than a passage from Estate of Ratliff, 395 So.2d 956, 957 (Miss. 1981), which, as cited in Martha's brief, states that an executor may not take inconsistent positions that would be detrimental to the appellants and beneficial to himself. Taken in its entirety, the quote reads as follows: "In the absence of fraud or mistake, the executor may not take, in the course of the same cause or proceeding, inconsistent positions which would be detrimental to the appellants, on the one hand, and beneficial to himself, on the other hand." Id.
¶ 27. When read in its entirety, it is evident that the language cited from Ratliff is inapplicable to the case at hand. See McNeil v. Hester, 753 So.2d 1057, 1070(¶ 49) (Miss.2000). As the supreme court explained in McNeil, the cited passage *1078 from Ratliff referred to a party who made conflicting representations to the court in the course of the same proceeding. Id. In this case, there was no allegation that Douglas made inconsistent representations to the court.
¶ 28. Instead, Martha's complaint was that Douglas retained assets that should have been placed into the estate. In this case, the chancellor found no wrongdoing by Douglas in the handling of his parents' estates. To the contrary, the chancellor noted that he was "satisfied with the Executor's performance of his statutory duties."
¶ 29. Similarly, we find no evidence of any error in the executor's administration of the estate. Martha alleged that Douglas misappropriated funds that belonged to the decedents; however, she filed no claim seeking to recover those funds. There was no evidence introduced that supported her allegations that Douglas mishandled any estate assets. Furthermore, posting a bond would not have secured any funds that Martha claimed were misappropriated during the lifetime of the decedents.
¶ 30. Specifically, Martha takes issue with rents collected from Hubert and Lela's home and with the proceeds from the sale of Hubert's truck. However, in the estate inventory filed with the court, Douglas noted each of these transactions. The inventory reflected that Douglas began renting his parents' home in January 2001, and he continued to do so until the end of 2002. The inventory further provided that Douglas sold his father's truck in July 2000. Also included in the inventory was a copy of the ledger on which Douglas listed all of the estate expenses from the time of his father's death in July 2002 until January 2003.
¶ 31. We find that with the chancellor did not err in appointing Douglas as executor without requiring Douglas to post a bond. The will contained a provision that waived any bond. Lacking any reason to require a bond, Mississippi Code Annotated section 91-7-45 requires the chancellor to waive bond when the will so dictates. This issue is without merit.

III. Whether the attorney's fees granted to the executor's attorney were excessive.
¶ 32. Lastly, Martha argues that the award of attorney's fees to Parsons was excessive. In concluding that the award was excessive, she compares Parsons's award of $10,000 in attorney's fees to the fees and expenses awarded to her as administratrix and to Douglas's former attorney, White. Martha argues that the estate was too small to support such an award. Specifically, Martha states that "it was precisely because the estate, or that portion that the Court would permit to probate, was so small, that the fee award was objectionable."
¶ 33. Attorney's fees for the executor are provided for by statute. Mississippi Code Annotated section 91-7-299 (Rev. 2004) provides, in part, as follows:
The court shall allow to an executor or administrator, as compensation for his trouble, either in partial or final settlements, such sum as the court deems proper considering the value and worth of the estate and considering the extent or degree of difficulty of the duties discharged by the executor or administrator; in addition to which the court may allow him his necessary expenses, including a reasonable attorney's fee, to be assessed out of the estate, in an amount to be determined by the court.
¶ 34. In awarding attorney's fees, the supreme court has said that a chancellor should consider the following:
(1) The time and labor required, the novelty and difficulty of the questions *1079 involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
Rich, 735 So.2d at 237(¶ 27) (quoting Moreland v. Riley, 716 So.2d 1057, 1062(¶ 16) (Miss.1998)).
¶ 35. In the present case, Parsons submitted a detailed billing statement that covered a one-and-a-half-year period. It reflected a rate of $150 per hour at most and a total amount due of $11,621.50. The chancellor refused to award the entire amount and instead reduced the award to $10,000. In doing so, the chancellor stated that he was not in the practice of awarding fees for "windshield time," which he used to refer to the time Parsons, an out-of-town attorney, spent driving between Wiggins, Mississippi and Gulfport, Mississippi. The chancellor noted that there were competent attorneys in Gulfport who could have handled the case, the hiring of whom could have eliminated the expenses incurred by Parsons's trips to and from Gulfport. Other than the "windshield time," the chancellor found Parsons's fees to be fair and reasonable.
¶ 36. In comparison, Martha's time sheet reflects attorney's fees of $100 per hour. Parsons's rate that Martha now complains of was not much more than the rate she billed. Furthermore, the amount Parsons received was less than $150 per hour after the chancellor refused to award him fees for his driving time.
¶ 37. The chancellor did not cite any authority in awarding attorney's fees, but such an omission is not grounds for reversal unless it constitutes manifest error. A & L, Inc. v. Grantham, 747 So.2d 832, 845(¶ 61) (Miss.1999) (citing Selman v. Selman, 722 So.2d 547, 554(¶ 29) (Miss. 1998)). In examining a chancellor's award of fees in an estate proceeding, the supreme court has said that:
Where there is substantial evidence to support his findings, this Court is without the authority to disturb his conclusions, although it might have found otherwise as an original matter. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989). Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee. Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990). The chancellor's decision must be upheld unless it is found to be contrary to the weight of the evidence or if it is manifestly wrong. O.J. Stanton & Co. v. Mississippi State Highway Comm'n, 370 So.2d 909, 911 (Miss.1979). Therefore, in order to be successful on appeal, Rich is saddled with the burden of establishing affirmatively and clearly that the chancellor's award of fees to the administrator, attorney and accountant is manifestly wrong and is not supported by substantial evidence. Watts v. Lawrence, 703 So.2d 236, 237 (Miss.1997).
Rich, 735 So.2d at 236(¶ 24).
¶ 38. Martha correctly points out that the award of attorney's fees consumed most of the liquid assets of the estate. Nevertheless, it did not consume the entire *1080 estate. The estate also included the real property that the brothers agreed to divide into thirds and the personal property listed in the inventory.
¶ 39. Ultimately, Hubert's and Lela's estates were not very complicated. The estates consisted of a parcel of real property, the personal property located in the decedents' home, and any funds in their checking account. Furthermore, they had no claims from creditors. Martha complains that the award of attorney's fees was too great for the size of the estate, yet she was responsible for the numerous motions to which Douglas, as the executor, was forced to respond.
¶ 40. In light of the time and work that went into this case in the chancery court, we find the chancellor did not abuse his discretion in making the award of attorney's fees to Parsons. Parsons's fees were reasonable and not far out of line with the fees claimed by Martha. Parsons submitted a detailed billing statement in support of Douglas's claim for attorney's fees. The chancellor also refused to grant the full amount that Parsons requested. We find that the chancellor properly considered the issue of attorney's fees and made a reasonable award. This issue is without merit.
¶ 41. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.